COMMONWEALTH OF KENTUCKY ex rel. CABINET FOR HUMAN RESOURCES, Plaintiff,

v.

The UNITED STATES of America, Defendant.

No. 107–88C.

United States Claims Court.

May 16, 1989.

John H. Walker, Frankfort, Ky., atty. of record for plaintiff.

Jane W. Vanneman, Washington, D.C., with whom was Asst. Atty. Gen. John R. Bolton, for defendant (Steve Edelstein, Dept. of Health and Human Services, of counsel).

## MEMORANDUM OF DECISION

HARKINS, Senior Judge.

Plaintiff, Commonwealth of Kentucky, claims $57,348 disallowed as a necessary expenditure in the Child Support Enforcement Program of the Department of Health and Human Services (HHS). Social Security Act, Subchapter IV—Part D, codified at 42 U.S.C. §§ 651–67 (Supp. III, 1985). During oral argument on January 19, 1989, on defendant's motion for summary judgment, the question of this court's jurisdiction under the Tucker Act (28 U.S.C. § 1491(a)(1) (1982)) was explored in the light of the decision in *Bowen v. Massachusetts*, 487 U.S. ——, 108 S.Ct. 2722, 101 L.Ed.2d 749 (1988) as to disallowances under HHS grant programs. Counsel were directed to file supplemental briefs on the jurisdictional issue. The issues have been briefed fully, there are no genuine issues as to any material fact, and disposition by summary judgment is appropriate. For the reasons that follow, this court has jurisdic-

tion over plaintiff's claim, and plaintiff is entitled to recover.

*Grant Program*

The Child Support Enforcement Program (Title IV–D program) is one of the grant programs administered by HHS under the Social Security Act. The program's purpose is to assist states in enforcing the support obligations owed by absent parents, in locating absent parents, in establishing paternity, and in obtaining child support. 42 U.S.C. § 651. The Title IV–D program is administered by a separate organizational unit that, among other responsibilities, establishes standards for state programs, establishes minimum organizational and staffing requirements for state units, and reviews and approves state plans. 42 U.S.C. § 652. A state plan must comply with the federal standards incorporated in the statute and in the HHS regulations. A state plan for child and spousal support must be in effect in all political subdivisions of the state. A state plan, among other requirements, must provide for financial participation by the state, provide procedures to secure and collect child support from a parent, provide that the state will take action to establish paternity of a child born out of wedlock, and provide for entering into cooperative arrangements with appropriate courts and law enforcement officials to assist in administering the plan. 42 U.S.C. § 654.

The statute provides that HHS "shall pay" to each state a percentage of the amounts expended by the state for operations under an approved plan. 42 U.S.C. § 655(a). The federal payments are advanced quarterly on the basis of estimates of future requirements, and adjustments are made for past expenditures. The statute provides for a stream of revenue to finance the state Title IV–D program. HHS pays to the state "the amount so estimated, reduced or increased to the extent of any overpayment or underpayment which the Secretary determines was made under this section to such State for any prior quarter." 42 U.S.C. § 655(b)(2).

The statutory framework for federal financial participation in the Title IV–D pro-

gram is implemented by HHS regulations. 45 C.F.R. Chapter III, Office of Child Support Enforcement (1987). The regulations provide procedures for administrative review of decisions relative to state plans and amendments, 45 C.F.R. § 301.14, and standards for program operations, including establishment of paternity, 45 C.F.R. § 303.5. General administrative requirements for Federal Financial Participation (FFP) are covered by Part 304. 45 C.F.R. §§ 304.10 et seq.

Cost principles and administrative requirements of Part 74 of the regulations apply to all grants made to states. 45 C.F.R. § 304.10. Subject to the statutory standards, FFP is to be available in expenditures under the state plan "in accordance with applicable State laws, rules, regulations, and standards." 45 C.F.R. § 304.11.

FFP at the applicable matching rate is available for:

> *Necessary expenditures* under the State Title IV–D plan for support enforcement services specified in this section and § 304.21. 45 C.F.R. § 304.20(a)(1). [Emphasis supplied].

> Paternity and support services under the State plan for individuals eligible pursuant to § 302.33. 45 C.F.R. § 304.20(a)(4)

Section 304.20(b) provides that the services and activities for which FFP will be available are those "made pursuant to the approved Title IV–D State plan which are determined by the Secretary to be necessary expenditures properly attributable" to the program. The items included are listed in 11 categories, many with multiple elements. Category 2, the establishment of paternity, includes:

> (i) Reasonable attempts to determine the identity of the child's father such as:
> (A) Investigation;
> (B) The development of evidence including the use of the polygraph and blood tests;
> (C) Pre-trial discovery;
> (ii) Court or other actions to establish paternity pursuant to procedures established under State statutes or regulations having the effect of law;

(iii) Identifying competent laboratories that perform blood tests as described in § 303.5(b) of this chapter and making a list of those laboratories available;

(iv) Referral of cases to the IV–D agency of another State to establish paternity when appropriate;

(v) Cooperation with other States in determining paternity.

Category 3, the establishment and enforcement of support obligations, includes:

(i) Investigation, the development of evidence and when appropriate, bringing court actions;

(ii) Determination of the amount of the child support obligation including developing the information needed for a financial assessment;

(iii) Referral of cases to the IV–D agency of another State to establish a child support obligation when appropriate;

(iv) Enforcement of a support obligation including those activities associated with collections and enforcement of court orders, such as contempt citations, issuance of warrants, investigation, wage attachment and processing, and the obtaining and enforcing of court-ordered support through civil or criminal proceedings either in the State that granted the order or in another State;

(v) Investigation and prosecution of fraud related to child and spousal support.

Section 304.21 covers FFP in costs of cooperative agreements with courts and law enforcement officials; provision for such agreement is required to be in the state plan. 45 C.F.R. § 302.34. The limitations on federal reimbursements for cooperative agreements in this category, which make FFP not available, include:

(1) Service of process and court filing fees unless the court or law enforcement agency would normally be required to pay the cost of such fees;

(2) Costs of compensation (salary and fringe benefits) of judges;

(3) Costs of travel and training related to the judicial determination process incurred by judges;

(4) Office-related costs, such as space, equipment, furnishings and supplies, incurred by judges;

(5) Compensation (salary and fringe benefits), travel and training, and office-related costs incurred by administrative and support staffs of judges.

On August 26, 1987, HHS amended the regulations to include "costs of counsel for indigent defendants in IV–D actions" in the list of expenditures for which FFP is not available. 45 C.F.R. § 304.23.

Part 305 of the HHS regulations implements the statutory requirement for an audit, at least once every 3 years, of the effectiveness of the IV–D program, and for adjustments in allowance of FFP in the program. In order to be found in compliance with the state plan requirement that the state undertake the establishment of paternity (45 C.F.R. § 305.24) the state among other requirements, must:

(a) Have established and be utilizing written procedures for obtaining the identity of the putative father from the applicant or recipient;

(b) Have established and use written procedures for establishing the paternity of any child at least until the child's 18th birthday:

(1) By court order or other legal process established by State law; and

(2) By acknowledgement, if under State law such acknowledgment has the same legal effect as court ordered paternity, including the rights to benefits other than child support.

\* \* \* \* \* \*

(e) Have identified all State statutes and regulations that provide procedures to be used in determining the paternity of a child born out of wedlock as required by § 302.17 of this chapter;

(f) Have available attorneys or prosecutors to represent the State in court or administrative proceedings when necessary with respect to the establishment of paternity;

\* \* \* \* \* \*

Adjustments after audit of FFP in a Title IV–D program are made administratively by the Director of the Office of Child Support Enforcement. Disputes of the Director's decision are subject to appeal to the HHS Departmental Grant Appeals Board (DGAB). 45 C.F.R. § 16.1, and App. A, § B(a)(1). In appeals by governments, the DGAB applies cost principles established by the Office of Management and Budget (OMB) in Circular A–87, Cost Principles for State and Local Governments. 45 C.F.R. § 74.171. For the years in issue, Circular A–87 in effect on January 8, 1988, set forth general criteria that costs must meet to be allowable under a grant program. Circular A–87, Attachment A, § C.1.a, 46 Fed.Reg. 9549 (Jan. 28, 1981). The Basic Guidelines in Attachment A included:

> a. Be necessary and reasonable for proper and efficient administration of the grant programs, be allocable thereto under these principles, and except as specifically provided herein, not be a general expense required to carry out the overall responsibilities of State, local or federally-recognized Indian tribal governments.

OMB subsequently revised Circular A–87 to delete from Attachment A, Basic Guidelines, the "general expense" for overall state responsibilities limitation on allowable costs in the state grant programs. 53 Fed. Reg. 40354 (Oct. 14, 1988). As revised, Circular A–87, Attachment A, § C.1.a provides:

> 1. *Factors affecting allowability of costs.* To be allowable under a Federal award, costs must meet the following general criteria:
>
> a. Be necessary and reasonable for proper and efficient performance and administration of Federal awards and be allocable thereto under these principles.

\* \* \* \* \* \*

*Plaintiff's Claim*

In this case, plaintiff challenges the January 8, 1988, decision of the DGAB which upheld determinations by the Director of the Office of Child Support Enforcement (Agency) to disallow costs associated with payment of fees for court appointed guardians ad litem for putative fathers below the age of majority who were defendants in paternity cases in the Title IV–D program in Kentucky. The costs in issue were incurred by the state during the period July 1978 to September 1987. In 1985, the Agency, through the audit process, noted that plaintiff's claims for FFP had included the costs of such guardians ad litem appointed by the court for defendants in paternity and child support cases under the Title IV–D program. A total of $41,901 had been included in grants awarded to the state before the April 10, 1987, disallowance determination was made. Of the total $57,348 disallowed after audit, $15,447 has since been retained by the Agency.

During the development of the dispute at the Agency level, plaintiff by letter dated August 9, 1985, requested the Regional Representative, Region IV–Atlanta, to obtain a legal opinion as to whether fees incurred with a guardian ad litem appointment in paternity cases in child support enforcement are "necessary costs" as defined in 45 C.F.R. § 304.20. The Regional Representative's response, dated April 21, 1986, advised that the Regional Office of the General Counsel had rendered an opinion. The April 10, 1987, determination of the Director, and the January 8, 1988, decision of the DGAB, substantially are based on the opinion rendered by the Regional Office of General Counsel. The April 21, 1986, letter includes substantial quotations of material from the opinion. The full text of the opinion of the Regional Counsel, however, has not been included in the administrative record filed with the Clerk in this case.

Both the Agency and the DGAB concluded that under Kentucky law, guardians ad litem appointed to represent minor putative fathers functioned as defense attorneys, indistinguishable from appointed defense counsel in other types of cases. Such costs were considered to be properly categorized as general expenses of state government. As such, under the Agency's interpretation of OMB Circular A–87, Cost Principles, the costs were not necessary and reasonable in

the administration of the Title IV–D program.

The DGAB noted that, under regulation section 304.20(b) FFP is available under an approved state plan for activities "determined by the Secretary" to be necessary expenditures properly attributable to the child support enforcement program and that Kentucky had provided no basis for a conclusion "that the Secretary's exercise of discretion is unreasonable." The DGAB stated:

> We conclude that the Secretary may properly determine that the costs associated with the obligation of the court to provide guardians to protect the interests of minor indigent defendants are not sufficiently connected to the purposes and activities of the federal program to be necessary expenditures.

*Bowen v. Massachusetts*

In *Bowen v. Massachusetts*, 487 U.S. ——, 108 S.Ct. 2722, 101 L.Ed.2d 749 (1988), the Supreme Court was concerned with the HHS grants in the Medicaid program under Title XIX of the Social Security Act, codified at 42 U.S.C. §§ 1396–1396q (Supp. V, 1987). The principal issue was whether a federal district court has jurisdiction under 28 U.S.C. § 1331 (1982) and the Administrative Procedure Act (APA), 5 U.S.C. §§ 702 & 704 (1982), to review a final order of the Secretary of HHS that disallows costs the state incurred for certain services rendered to retarded citizens.

Jurisdiction of the Claims Court is not determined by, or concerned with, the procedures established in the APA. *Wathen v. United States*, 208 Ct.Cl. 342, 527 F.2d 1191, 1198, n. 6 (1975); *McGrath v. United States*, 207 Ct.Cl. 978, 521 F.2d 1406 (1975); *Mosely v. United States*, 15 Cl.Ct. 193, 194 (1988). The *Bowen v. Massachusetts* decision, accordingly, does not directly bear upon the issue of this court's jurisdiction to decide plaintiff's claim. In *Bowen v. Massachusetts*, however, the United States argued that the Claims Court has exclusive jurisdiction over a civil action against the United States that includes both a Tucker Act claim for more than $10,000 in money damages and a claim for declaratory or injunctive relief involving the same issues as the Tucker Act claim. This argument failed. The Supreme Court's analysis in the process of rejecting the Government's contention, and the Court's rejection of the arguments advanced in the dissent, however, clouds the precedent on the scope of this court's jurisdiction which has been established by the Court of Claims and the Court of Appeals for the Federal Circuit.

The statutory authority for the grant program authorized in Title XIX considered in *Bowen v. Massachusetts* structurally is similar to the Title IV–D program involved in plaintiff's claim. In both programs, the legislation provides the Secretary "shall pay" to the state with an approved plan the grants authorized. 42 U.S.C. §§ 655(a) & 1396b(a). State plans are required in both programs, and the requirements of the state plan are specified in detail. The mechanics of FFP involve the same type of a "stream of revenue". Advance payments based on estimates of anticipated future expenditures are followed by adjustments to reflect actual experience in past expenditures. The Government reimburses the state, typically on a quarterly basis, for expenses incurred in the program, and asserts disallowances as appropriate. After notice of a disallowance, the state must exhaust its administrative remedy by appeal to the DGAB.

In *Bowen v. Massachusetts*, the Supreme Court analyzed 5 U.S.C. §§ 702 & 704 of the APA. The Court concluded that the state's Medicare program claim was not an action seeking relief other than monetary damages, and that a remedy in the Claims Court was not adequate. The district court was held to possess jurisdiction to provide complete relief on a disallowance claim under the Medicare program: declaratory relief as to past agency action, injunctive relief as to prospective agency action, and specific relief for a monetary award to enforce a statutory mandate for the payment of money.

In the course of its analysis, the Supreme Court distinguished "money damages" as that term is used in the law, from

a monetary adjustment in an equitable action for specific relief. Neither a disallowance decision, nor the reversal of a disallowance decision, is properly characterized as an award of money damages. 108 S.Ct. at 2731. The suit to enforce the "shall pay" language of the Medicaid Act is not a suit seeking money in compensation for the damages sustained by the failure of the Federal Government to pay as mandated; rather, it is a suit seeking to enforce the statutory mandate itself, which happens to be for the payment of money. 108 S.Ct. at 2735.

Availability of any review of a disallowance decision in the Claims Court was found to be doubtful. The Court reasoned that Tucker Act litigation in the Claims Court provides the kind of special procedures needed to remedy particular categories of past injuries or labors, for which various federal statutes provide compensation. On the other hand, managing the relationships between the states and the Federal Government that occur over time and involve constantly shifting balance sheets requires a different sort of review and relief process, which the Court found the APA was tailored to fit. 108 S.Ct. at 2737, n. 39.

The Court discussed the Claims Court Tucker Act jurisdiction, as illuminated in *United States v. Testan,* 424 U.S. 392, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976) and *Eastport S.S. Corp. v. United States,* 178 Ct.Cl. 599, 372 F.2d 1002 (1967), and statutes such as the Back Pay Act which have been "interpreted as mandating compensation by the Federal Government." Such laws were seen as laws that attempt to compensate a particular class of persons for past injuries or labors. In contrast, the statutory mandate of a federal grant-in-aid program directs the Secretary to pay money to the state, not as compensation for a past wrong, but to subsidize future state expenditures. The Court noted that Congress has not created an express cause of action providing for the review of disallowance decisions in the Claims Court. 108 S.Ct. at 2738, n. 42.

The jurisdiction of the Claims Court to entertain an action is dependent upon a claim for money presently due. If a state elects to retain the amount covered by a disallowance until completion of DGAB review, the Court noted, no suit could be filed until after the disallowance is recouped from a future quarterly payment. Further, since quarterly payments are advanced against expenses not yet incurred, a dispute concerning the status of the open account is not one in which the state can claim entitlement to a specific sum of money owed by the Federal Government. 108 S.Ct. at 2738–39.

The Court also noted that neither the Claims Court nor the Court of Appeals for the Federal Circuit has any special expertise in considering the state law aspects of the controversies that give rise to disallowances under grant-in-aid programs. The Court observed that it would be "nothing less than remarkable" to conclude that Congress intended judicial review of these complex questions of federal-state interactions to be reviewed in a special forum, such as the Claims Court. 108 S.Ct. at 2739. Although the Court of Appeals for the Federal Circuit is an Article III court, the Court observed that it seems "highly unlikely" that Congress intended to designate an Article I court as the primary forum for judicial review of agency action that may involve questions of policy that can arise in these cases. The policies of the APA were held to take precedence over the Tucker Act. 108 S.Ct. at 2739–40, n. 46.

As to the argument that the Claims Court has exclusive jurisdiction of Tucker Act claims of more than $10,000, the Court noted that this assumption was not based on any specific language in the Tucker Act to grant exclusive jurisdiction to the Claims Court. 108 S.Ct. at 2740–41, n. 48.

DISPOSITION

■ The Tucker Act provides four alternative foundations for claims against the United States. The Claims Court may render judgment on any claim founded *"either* upon the Constitution, *or,* any Act of Congress *or* any regulation of an executive

department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1) (Emphasis supplied). Both parties assert that this authority includes plaintiff's challenge to the DGAB disallowance of FFP for costs of court appointed guardians ad litem for minor defendants in cases to establish paternity in the Title IV-D program.

Defendant's position is based on the "shall pay" language in the statute. If a plaintiff's primary objective is to secure money, and there is a statute mandating the payment of money, defendant argues, that statute impliedly authorizes a claim for damages, in the Claims Court. According to defendant, the majority decision in *Bowen v. Massachusetts*, does not preclude the Claims Court from exercising Tucker Act jurisdiction concurrently with the district court in cases where the grant program involves a "stream of revenue" relationship. Plaintiff has a choice of forum— either the Claims Court or the district court.

Plaintiff bases jurisdiction on defendant's retention of money owed to the state under an express or implied contract between HHS and the state that arises by operation of the program authorized in Title IV-D. Plaintiff emphasizes that it seeks the FFP portion of payments already expended by the state pursuant to court order, not projected future expenditures or advance quarterly payments. Plaintiff argues that the majority in *Bowen v. Massachusetts* allows the Claims Court to act on purely monetary aspects of a continuing grant program where a debt has been established.

The Supreme Court's analysis in *Bowen v. Massachusetts* of the Government's contentions, as well as its analysis of the mechanics of FFP in the states' Medicaid programs, suggests that, if the Claims Court Tucker Act jurisdiction had been before it on the merits, the Claims Court would not be seen as an appropriate forum to resolve claims for compensation as a result of the Government's failure to pay FFP in con-

tinuing grant relationships such as authorized in Title IV-D. The Court's extensive discussion of the distinction between "money damages" and "monetary relief" and "adjustments" of overpayments and underpayments, as well as the Court's observations concerning judicial review of complex questions of federal/state interaction, render a decision for continued Tucker Act jurisdiction over this type of claim unlikely.

*Bowen v. Massachusetts*, however, decided only the jurisdiction of the district courts. Court of Claims and Federal Circuit precedent on Tucker Act jurisdiction over claims that arise from federal grant programs was not specifically overruled. Precedent of the Court of Claims includes claims arising from grant programs that involved the same type of federal/state relationships and stream of revenue adjustments as were examined in *Bowen v. Massachusetts*. Jurisdiction has been founded on the Tucker Act's contract authority, and on statutes mandating money payment. *Whitecliff, Inc. v. United States*, 210 Ct.Cl. 53, 536 F.2d 347, 351 (1976), *cert. denied*, 430 U.S. 969, 97 S.Ct. 1652, 52 L.Ed.2d 361 (1977) (Medicare provider Part A disputes under Title XVIII, Social Security Act, for the cost years prior to June 30, 1973). Jurisdiction over continuing Medicare grant program also has been founded on statutes and regulations that mandate payment. *Spokane Valley General Hospital v. United States*, 231 Ct.Cl. 550, 688 F.2d 771, 776 (1982).

In *Chula Vista City School District v. Bennett*, 824 F.2d 1573 (Fed.Cir.1987), *cert. denied*, 484 U.S. ——, 108 S.Ct. 774, 98 L.Ed.2d 861 (1988), the Federal Circuit held that the Tucker Act vests exclusive jurisdiction in the Claims Court on claims founded on statute and regulation which exceed $10,000. The court asserted that where the prime effort of the claims is to obtain money from the Government, the exclusive jurisdiction of the Claims Court cannot be avoided by drafting a complaint which appears to seek only injunctive, mandatory or declaratory relief against the Government. *Id.* at 1579. *Chula Vista* was cited in *Bowen v. Massachusetts*, but was not overruled. The federal grant program in *Chu-*

*la Vista* did not involve a stream of revenue type of relationship. 108 S.Ct. at 2726, n. 1.

Tucker Act jurisdiction historically has been asserted where federal grant funds are made available to various governmental and private organizations. Jurisdiction has been founded upon Tucker Act authority relative to contract claims. The initial determination to undertake and fund a grant program is an exercise of sovereign power and the grant itself is a gratuity. It is well established that the Federal Government is not liable for damages resulting from sovereign acts performed by it in its sovereign capacity. *Horowitz v. United States,* 267 U.S. 458, 461, 45 S.Ct. 344, 345, 69 L.Ed. 736 (1925); *D.R. Smalley & Sons, Inc. v. United States,* 178 Ct.Cl. 593, 372 F.2d 505, 507, *cert. denied,* 389 U.S. 835, 88 S.Ct. 45, 19 L.Ed.2d 97 (1967). Obligations of the United States assumed in the programs to implement the sovereign determination, however, have been found to be within the Tucker Act jurisdiction of the Claims Court. In proceedings to enforce the obligations in a grant, the Government is bound only by its express undertakings. *City of Manassass Park v. United States,* 224 Ct.Cl. 515, 633 F.2d 181, 184 (1980) (Contract between sewage authority and EPA pursuant to the Federal Water Pollution Control Act); *Missouri Health & Medical Org. v. United States,* 226 Ct.Cl. 274, 641 F.2d 870, 873–74 (1981) (Contract between a health services corporation and Region VII Public Health Service of HEW under Public Health Service Act); *State of Texas v. United States,* 210 Ct.Cl. 522, 537 F.2d 466, 470–71 (1976) (Disaster Assistance Agreement pursuant to the Federal Disaster Act); *Idaho Migrant Council, Inc. v. United States,* 9 Cl.Ct. 85 (1985), *aff'd,* 802 F.2d 471 (Fed.Cir.1986) (Grant under Ex. Order No. 11625 from Minority Business Development Agency, Dept. of Commerce).

On the basis of this precedent, it is determined that this court has jurisdiction to decide the claim in plaintiff's complaint. On the facts, the claim is included in Tucker Act jurisdiction over any express or implied contract. HHS assistance in the preparation of the state Title IV–D plan, its approval of the state plan, and the elaborate administrative procedures developed to determine and implement FFP payments, creates a contractual relationship and obligates the Government to the terms agreed upon. These obligations may be enforced in the Claims Court. Plaintiff's claim also is included in the Tucker Act authority derived from statutes and regulations of an executive department that mandate payment of money. The "shall pay" provision in the statute, and its implementation in the regulations, clearly complies with the requirement that the claim be founded upon a provision that mandates payment of money. 42 U.S.C. § 603(a), 45 C.F.R. § 304.20. *See United States v. Mitchell,* 463 U.S. 206, 218, 103 S.Ct. 2961, 2968, 77 L.Ed.2d 580 (1983) (*Mitchell II*); *United States v. Testan,* 424 U.S. 392, 400, 96 S.Ct. 948, 954, 47 L.Ed.2d 114 (1976).

Decision on the merits of plaintiff's claim requires an examination into the reasonableness, in the circumstances, of the Secretary's disallowance through the DGAB of the costs for providing guardians ad litem in paternity cases and in cases to enforce support obligations. That appointment of guardians ad litem was a "necessary" cost in Kentucky cases has been recognized throughout the controversy. Guardians ad litem in Kentucky are required by state law, and neither the Regional Director nor the DGAB contended that the state was not obligated to provide such representation.

The disallowance is grounded on the Secretary's discretion to determine what is "necessary and reasonable" for the Title IV–D program. The Secretary's discretion is not unlimited. The issue on the merits therefore becomes whether this exercise of discretion by the Secretary was arbitrary and unreasonable in the context of the contractual obligations created through the exercise of authority defined in statute and regulation.

Review of the Government's decision to disallow a cost in a grant program is limited to an examination of whether the facts disclosed in the administrative record, or by

a trial de novo, show an action that conforms with the commitments the parties have assumed in the program, and whether the action complies with the applicable statutory and regulatory standards. *Monterey Life Systems, Inc. v. United States,* 225 Ct.Cl. 50, 635 F.2d 821 (1980); *Whitecliff, Inc. v. United States,* 210 Ct.Cl. 53, 536 F.2d 347 (1976), *cert. denied,* 430 U.S. 969, 97 S.Ct. 1652, 52 L.Ed.2d 361 (1977). Substantial weight is afforded the interpretation given a statute by an agency charged with its administration. The agency's construction of a statute should be followed unless there are compelling indications that it is wrong. *Chula Vista City School District v. Bennett,* 824 F.2d at 1580; *Wilson v. Turnage,* 791 F.2d 151 (Fed.Cir.), *cert. denied,* 479 U.S. 988, 107 S.Ct. 580, 93 L.Ed.2d 583 (1986).

■ Kentucky's Title IV–D program is entirely the product of HHS effort pursuant to authority established in the Act. The dominant role of HHS pervades all aspects of the federal/state relationship. The content of Kentucky's program was determined by the Secretary. In order to participate and obtain FFP, the state was required to enact legislation to provide for procedures to determine paternity and to establish child support obligations. Every provision of the state program was developed through the assistance of HHS, and HHS reviews and approves each element. The state plan was required to be submitted "in the format and containing the information prescribed" by the Office. 45 C.F.R. § 301.11.

One of the major instruments for realizing the objectives of the Federal Title IV–D program is litigation to establish paternity and to enforce support obligations through civil or criminal actions. HHS regulations recognize an obligation to pay all direct costs made by a state under an approved plan. Kentucky's claim involves only direct costs incurred in litigation that was required by HHS to be authorized in its plan, and which was instituted only in its Title IV–D program effort.

The Federal Title IV–D program could not operate in Kentucky, in situations where litigation is needed and the putative father is a minor, if guardians ad litem were not appointed. The expenses of the guardian ad litem are taxed as part of the costs of a particular action. Such direct costs are reimbursable under HHS regulations.

In Kentucky, a guardian ad litem must be appointed in all actions brought against an "unmarried infant" (under the age of 18) in the absence of an existing guardian. Kentucky Rules of Civil Procedure 4.04(3) and 17.03. In the Title IV–D program, a guardian ad litem must be appointed to represent a 17 year old father being sued in an action to establish paternity, and no judgment may be rendered against such defendant in the absence of an appointed guardian ad litem or similar representative. The court must allow the guardian ad litem a "reasonable fee" for his services, taxed as costs. A guardian ad litem must be "a regular, practicing attorney." In Kentucky, in the absence of a guardian ad litem, to render a judgment against a minor defendant is reversible error. *Stivers v. Samuels,* 415 S.W.2d 366 (Ky.1967); *Smith v. Smith,* 72 S.W.2d 425 (Ky.1934).

HHS regulations in Part 304, the basic section on FFP, makes FFP available for "necessary expenditures", 45 C.F.R. § 304.20(a)(1), or those expenditures "which are determined by the Secretary to be necessary expenditures properly attributable" to the program. 45 C.F.R. § 304.20(b). Expenditures to establish paternity through court or other actions pursuant to procedures established under state statutes or regulations having the effect of law under HHS regulations are "necessary expenditures properly attributable to the Child Enforcement Program." 45 C.F.R. § 304.20(b)(2).

The "necessary and reasonable" test, applied by the Regional Director, by the Director of Office of Child Support Enforcement, and by the DGAB, is found in OMB Circular A–87, Cost Principles for State and Local Governments. Circular A–87 is incorporated by reference in the HHS regulations. 45 C.F.R. § 74.171. Although its incorporation by reference gives OMB Cir-

cular A–87 the force of HHS regulations, its provisions are not set forth in the HHS regulations.

Circular A–87 is issued by OMB as a supplementary interpretative guideline for general guidance to government agencies to promote consistency and efficiency. 31 U.S.C. §§ 6301, 6304 & 6307 (1982). Supplemental interpretive guidelines of OMB are directed toward realization of comprehensive objectives, and necessarily embrace generalized concepts. Specific programs and the terms of specific grant agreements are not addressed, and flexibility as to particular grant programs is recognized. Circular A–87 does not determine the scope of the Secretary's discretion in a consideration of a particular cost element as a necessary expenditure properly attributable to a particular grant program. As a general guideline, it is not determinative in an interpretation of the Government's contract obligations in a particular grant program.

One objective of Circular A–87 is to assure that the general costs of state government are not included in the cost of a grant program. Attachment B of the version of Circular A–87 in effect on January 8, 1988, included as allowable costs "the cost of legal expenses required in the administration of grant programs", but excluded legal services furnished by the chief legal officer of a state, or his staff, "solely for the purpose of discharging his general responsibilities as legal officer." Circular A–87, Attachment B, § B.16; 46 Fed.Reg. 9502 (Jan. 28, 1981). This objective is clarified in the amended version of Circular A–87. Amended Attachment B provides specifically that the general costs of government are unallowable, including prosecutorial costs, unless such prosecutorial activities are "treated as a direct cost to a specific program when authorized by program regulations." Attachment B, § 21(4); 53 Fed. Reg. 40359 (Oct. 14, 1988). Further, costs of professional services from individuals who are not employees of the governmental unit in a particular case are allowable after consideration of eight listed relevant factors, none of which, according to the Circular, are necessarily determinative. Certain legal costs that are not allowable

are listed. These include such expenses as: costs incurred in defense against government claims or appeals, antitrust suits, claims or appeals against the Government, and costs incurred in connection with patent infringement litigation. Appendix B, §§ 30(b) & (d); 53 Fed.Reg. 40361 (Oct. 14, 1988).

The DGAB and defendant cite the decision in *Com. of Pa., Dept. of Public Welfare v. Heckler,* 730 F.2d 923 (3d Cir.1984), as support for the conclusion that the disallowed costs for guardians ad litem were not "necessary and reasonable" to the Federal program. In *Com. of Pa. v. Heckler,* the state was obligated to prosecute welfare fraud cases to carry out the overall responsibilities of state government. The factual situation in *Com. of Pa. v. Heckler* differs substantially from the situation that exists with respect to fees for guardians ad litem in Kentucky. The separate cooperative agreement between the Pennsylvania Department of Public Welfare and the Philadelphia District Attorney was not an activity integrated in the Title IV–D program. The Third Circuit declined to accept the argument that the particular plight of Philadelphia justified a special exception to the limitation that general government expenses are not reimbursible. The costs disallowed in the Kentucky program are at the core of cases to establish paternity and to enforce support obligations.

Defendant draws a distinction between prosecutorial or enforcement activities in a Title IV–D program and defense functions. Defendant contends that activities for which FFP is available reasonably include only those costs associated with the functions incurred for the benefit of the child. Defendant asserts that the function of the guardian ad litem, in contrast, is to defend the interest of the minor putative father, not the interest of the child.

This distinction is not valid. In Kentucky, a guardian is considered an officer of the court, in addition to being both a fiduciary and attorney for the minor defendant. *Black v. Wiedeman,* 254 S.W.2d 344 (Ky.1953). In a proceeding to establish paternity, in Kentucky, the court requires

appointment of a guardian ad litem. In the absence of such appointment, paternity could not be established and the Federal program as to that case would be frustrated in toto. In each case, the costs involved are direct costs. Plaintiff's claim does not seek recovery of general government expenses of Kentucky.

In summary, the disallowance of costs for guardians ad litem in the Kentucky Title IV–D program was contrary to the provisions of the contract between HHS and the Commonwealth of Kentucky, acting through its Cabinet for Human Resources. The decision of the Secretary, through the DGAB, was contrary to HHS regulations and OMB Circular A–87. The disallowance, accordingly, was arbitrary, and beyond the scope of the Secretary's discretion.

For the foregoing reasons, there is no genuine issue of material fact in this case and plaintiff is entitled to judgment as a matter of law. Defendant's motion for summary judgment is DENIED. Plaintiff has been paid $41,901 of the total $57,348 disallowed by HHS. Plaintiff is entitled to recover the $15,447 that defendant has withheld.

The Clerk is directed to enter judgment for plaintiff in the amount of $15,447. Said judgment is to be paid promptly out of the Judgment Fund. 28 U.S.C. § 2517 (1982). No costs.