**TOWN OF FLOYD, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

No. 94–570 C.

United States Court of Federal Claims.

Oct. 12, 1995.

James L. Marketos, Washington, D.C., for plaintiff.

Edmund W. Chapman, United States Department of Justice, Washington, D.C., for defendant.

## OPINION

HODGES, Judge.

Defendant moved to dismiss plaintiff's contract claim because it did not state the elements of an implied-in-fact contract. We grant defendant's motion to dismiss.

### Discussion

The Town of Floyd is a municipal corporation located near Griffiss Air Force Base in New York. While investigating the effects of de-icing chemicals used at the base, representatives of the Air Force and residents of the town discovered contamination in drinking water wells adjacent to the base. Until clean up of the site could be accomplished, the Air Force provided a grant of $500,000 to cover the design costs of extending existing water lines from the neighboring City of Rome to provide safe drinking water to the

affected residents of the town. The Air Force also offered to pay its share of installing the alternative water system.

Plaintiff commissioned engineering designs and plans and solicited bids for the construction work, including the Charles Road and Davis Road areas now in dispute (Area B). Department of Air Force personnel reviewed and approved the designs, plans, and bid specifications. Meanwhile, the Air Force continued testing and analysis to determine the nature and extent of the contamination. Eventually, it set up a buffer zone of coverage, drawing boundaries beyond which the Air Force would not be responsible for water line construction. Consequently, the Air Force divided the Town of Floyd into four parcels—Areas A, B, C, and D—and limited funding for the water line installation costs to those portions of the town in which groundwater had been contaminated by the Air Force. The Air Force determined that it had not contaminated Area B.

The Air Force entered into a contract with the City of Rome to extend that city's water system to the contaminated areas of the Town of Floyd. Area B was not included in the contract. Despite defendant's refusal to pay for Area B, plaintiff financed construction of the entire project. The town seeks reimbursement of $310,000 for construction of the municipal water system allocable to Area B.

Plaintiff contends that Mr. Gary Vest, then the Air Force Deputy Assistant Secretary for Environment, Safety and Occupational Health, bound the Air Force to provide service to Area B and that the Air Force's failure to include Area B in its contract with the City of Rome constitutes breach of an implied-in-fact contract.

## I.

### Implied-in-Fact Contract

■ An implied-in-fact government contract requires findings of mutual intent to contract, consideration, and unambiguous offer and acceptance. *City of El Centro v. United States*, 922 F.2d 816, 820 (Fed.Cir. 1990), *cert. denied*, 501 U.S. 1230, 111 S.Ct. 2851, 115 L.Ed.2d 1019 (1991). Moreover, plaintiff must show that an authorized official bound the United States. *Id.*

## A.

### Mutual Intent to Contract

■ Plaintiff must demonstrate that "the parties intended to bind each other and expressed those intentions clearly." *Hubbs v. United States*, 20 Cl.Ct. 423, 426 (1990) (citing *Russell Corp. v. United States*, 210 Ct.Cl. 596, 609 (1976), *cert. denied*, 429 U.S. 1073, 97 S.Ct. 811, 50 L.Ed.2d 791 (1977)). The Town of Floyd may have intended to enter into a binding contract regarding Area B, but it proffers no evidence that Mr. Vest intended to contract on behalf of the Air Force to extend water lines to Area B. Plaintiff alleges facts showing negotiations between Mr. Vest and the town, but "[e]xtensive negotiations in which the parties demonstrate hope and intent to reach an agreement are not sufficient in themselves to establish a contract implied-in-fact." *Pacific Gas & Electric Co. v. United States*, 3 Cl.Ct. 329, 339 (1983) (footnote omitted), *aff'd*, 738 F.2d 452 (Fed.Cir.1984).

■ Plaintiff argues that Mr. Vest's deposition testimony supports an intent to bind the Air Force:

[A]t the time we made the offer of the [$]500,000 [for planning and design] we also indicated that the Air Force would pay its appropriate or fair share of actually putting in an alternative water system....

. . . .

Q. Okay. And when you offered these sums, did you consider yourself to have bound the Air Force to coming forth with those sums if whatever conditions you imposed for their receipt were met?

A. On the basis of my responsibilities in the consultation, coordination that went into the development of the offer, I certainly believed that, and I think it is true that it was a genuine offer and that barring something unbeknownst to me or someone else, that if the offer were accepted, that indeed the Air Force would have taken the—would take the actions to implement that offer.

This testimony may indicate that Mr. Vest intended to bind the Air Force to its "fair share" of the installation costs, but it does not show that Mr. Vest bound the Air Force to pay for installation to Area B. When Mr. Vest said that the Air Force would pay its fair share, the Air Force had not determined the extent of the contamination; its fair share had not been calculated.

The Town Supervisor asked Mr. Vest at a meeting with town officials whether his offer included Area B. Mr. Vest responded, "I won't quibble over a road or two." Plaintiff argues that Mr. Vest included Area B in his offer by so responding. Pressed further, Mr. Vest finally said, "Yes." This exchange does not demonstrate an unequivocal, definite, mutual intent to bind the Air Force. Mr. Vest thought that the Air Force would pay its fair share of the contamination problem. He did not make a binding promise to correct the problem in Area B.

### B.

### Consideration

■ Plaintiff finds consideration for an implied-in-fact contract with defendant in its forbearance of litigation and reliance on defendant's assurances. Forbearance in pressing bona fide claims can constitute valuable consideration, but that theory does not apply here. Plaintiff did not know the extent of the contamination when it agreed not to pursue damage claims for Area B. Thus, its forbearance is not valuable. Had contamination in Area B been established when plaintiff agreed to forego litigation, its forbearance might have constituted valuable consideration.

■ We do not have a suitable substitute for consideration such as detrimental reliance. Plaintiff admits that it went forward with construction of the entire project notwithstanding defendant's refusal to pay for construction costs in Area B. Plaintiff could not have relied on the promise allegedly made by defendant. Plaintiff has no evidence of consideration.

### C.

### Unambiguous Offer

■ Mr. Vest's deposition does not show offer and acceptance. While he did use the terms "offer" and "acceptance," Mr. Vest stated only that the Air Force would pay its "fair share" of installing an alternative water system. His statements were not unambiguous offers to extend service to Area B. That area had not been deemed contaminated at the time.

### D.

### Authority

■ "A government official who allegedly binds the Government to a contract implied-in-fact must have had the actual authority to do so." *Goolsby v. U.S.*, 21 Cl.Ct. 629, 631 (1990) (citation omitted). A party entering into a contract with a government official "takes the risk of having accurately ascertained that he who purports to act for the Government stays within the bounds of his authority." *Federal Crop Insurance Corp. v. Merrill*, 332 U.S. 380, 384, 68 S.Ct. 1, 2, 92 L.Ed. 10 (1947).

■ Plaintiff's complaint does not allege that Mr. Vest had actual authority to bind the Government. Plaintiff states: "Mr. Vest represented that he had authority to commit defendant to pay for remedial action and, on information and belief, Mr. Vest had that authority." Plaintiff asserts that Mr. Vest "had no doubt of his discretion to make 'offers' or commitments on behalf of the Air Force," and that Mr. Vest consistently represented himself to town officials as having that authority. The appearance of authority is not dispositive. An official must have actual delegated authority to enter into or amend an agreement. *See id.* at 384, 68 S.Ct. at 2. Mr. Vest's understanding of his own authority is not conclusive.

■ Mr. Vest did not claim authority to bind the Government to extend service to Area B. The town admits that contracting was not Mr. Vest's function and that he did not have a warrant to contract for a municipal water system. According to plaintiff, Mr. Vest had authority to approve the use of

Defense Environmental Restoration Program (DERP) funds for remedying contamination and wide discretion to conduct environment cleanup. If Mr. Vest could delegate funds to remedy environmental damage, plaintiff has not shown that he had authority to determine the extent of damage. Mr. Vest stated in his deposition:

> The fair share is—well, in this particular case would be to provide water to those areas where the water was in fact—or determined by appropriate authority to have been contaminated or to have a high—reasonable probability, really, whatever, to have been contaminated by some action or activity of the Air Force and that would be the extent of fair share.

For Mr. Vest to have exercised the authority that plaintiff submits he possessed, the "appropriate authority" must have established contamination. Plaintiff has not alleged facts sufficient to demonstrate that Mr. Vest had actual authority to bind the Air Force to pay for damage to an area that had not yet been determined to be damaged by the Air Force.

## II.

### Contract Arising Out of The Defense Environmental Restoration Program

 The Town of Floyd argues that its claim arises out of a federal program providing for funding or services. In support of this theory, plaintiff cites *Commonwealth of Kentucky ex rel. Cabinet for Human Resources v. United States*, 16 Cl.Ct. 755 (1989) and *City of Wheeling, W.Va. v. United States*, 20 Cl.Ct. 659 (1990), *aff'd without opinion*, 928 F.2d 410 (Fed.Cir.1991). These cases are distinguishable from the present situation.

*Commonwealth of Kentucky* concerned a federal statute providing that the Department of Health and Human Services "shall pay" to each state a percentage of the amounts expended by the state for operations under an approved child support enforcement plan. 16 Cl.Ct. at 756 (citing 42 U.S.C. § 655(a)). The court held that:

> HHS assistance in the preparation of the state Title IV–D plan, its approval of the

state plan, and the elaborate administrative procedures developed to determine and implement FFP payments, creates a contractual relationship and obligates the Government to the terms agreed upon.... The "shall pay" provision in the statute, and its implementation in the regulations, clearly complies with the requirement that the claim be founded upon a provision that mandates payment of money.

*Id.* at 762 (citations omitted). The court noted that its jurisdiction is "dependent upon a claim for money presently due." *Id.* at 760. The program concerned was a grant program, and "[p]recedent of the Court of Claims includes claims arising from grant programs...." *Id.* at 761.

The Defense Environmental Restoration Program is not a federal grant program like the program in *Commonwealth of Kentucky*. Federal grant programs direct the Secretary "to pay money to the state, not as compensation for a past wrong, but to subsidize future state expenditures." *Id.* at 760. The Defense Environmental Restoration Program seeks, among other goals, to identify, investigate, research, develop, and clean up contamination at facilities under the jurisdiction of the Secretary of Defense. *See* 10 U.S.C. § 2701(a), (b). It is a program of environmental restoration that compensates for past injuries or wrongs. It does not mandate payment of money but makes funds available for remedial projects.

The statute in *City of Wheeling* authorized the Environmental Protection Agency to make grants to any municipality for the construction of publicly owned waste treatment works. 33 U.S.C. § 1281(g)(1). After an applicant submits plans and estimates and the EPA approves, the approval "shall be deemed a contractual obligation of the United States for the payment of its proportional contribution to such project." 33 U.S.C. § 1283(a)(1). As in *Commonwealth of Kentucky,* the statute in *City of Wheeling* contains language creating a contractual obligation. The Defense Environmental Restoration Program contains no such language and does not create a contractual obligation to pay money.

If DERP conferred jurisdiction on this court, Mr. Vest's authority under that statute would not allow him to bind the Government in this case. Mr. Vest could carry out certain functions of the Secretary of Defense assigned by DERP. However, the statute provides only that:

> The Secretary [of Defense] may enter into agreements on a reimbursable basis with any other Federal agency, and on a reimbursable or other basis with any State or local government agency, to obtain the services of that agency to assist the Secretary in carrying out any of the Secretary's responsibilities under this section. Services which may be obtained under this subsection include the identification, investigation, and cleanup of any off-site contamination possibly resulting from the release of a hazardous substance or waste at a facility under the Secretary's jurisdiction.

10 U.S.C. § 2701(d). Therefore, if Mr. Vest had the same authority as the Secretary, he could reimburse only those expenses of remedying environmental damage that the Secretary has responsibility to remedy. For example, this section may confer authority to contract with the City of Rome to extend its existing water system to the contaminated areas in the Town of Floyd. However, Area B in the Town of Floyd was deemed to be an area not damaged by the Air Force. Mr. Vest had no authority to contract in that area. We do not address the issues of whether Area B was contaminated and whether the Air Force abused its discretion in refusing to fund the construction of the system to Area B.

### Conclusion

Plaintiff has not established a claim arising out of a federal program providing for funding or services nor an implied-in-fact contract. Defendant's Motion to Dismiss is GRANTED. No costs.