**CITY OF WHEELING, WEST VIRGINIA, a Municipal Corporation, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 403–88L.**

United States Claims Court.

June 11, 1990.

---

**21.** See n. 20

Paul T. Tucker, Wheeling, W.Va., for plaintiff.

Carl Strass, with whom was Asst. Atty. Gen. Roger Marzulla, Dept. of Justice, Washington, D.C., for defendant.

## OPINION

ROBINSON, Judge.

This action is before the Court on cross-motions for summary judgment pursuant to RUSCC 56. Plaintiff, City of Wheeling, West Virginia (Wheeling), alleges that the United States Environmental Protection Agency (EPA) abused its discretion by refusing to award additional grant funds in the amount of $275,000 to Wheeling. In the alternative, plaintiff asserts that defendant's motion for summary judgment should be denied, and plaintiff should be given the opportunity for factual development of its due process claims.

Defendant counters that plaintiff's failure to observe the applicable grant regulation was sufficient grounds to deny enlargement of grant funds and, accordingly, seeks summary judgment. Defendant further contends that plaintiff's procedural due process claims are irrelevant without allegations of substantive injury. For the reasons which follow, defendant's motion

for summary judgment will be granted and plaintiff's cross-motion for summary judgment will be denied.

### Factual Background

Under the Federal Water Pollution Control Act, 33 U.S.C. §§ 1251–1299, federal financial assistance is provided to construct publicly owned waste treatment works. 33 U.S.C. § 1281(g)(1) authorizes the Administrator of the EPA to make grants to any municipality for the construction of such works. After an applicant for a grant submits for approval the necessary plans and estimates for each construction project, the Administrator shall act upon the application as soon as practicable and his approval "shall be deemed a contractual obligation of the United States for the payment of its proportional contribution to such project." 33 U.S.C. § 1283(a)(1).

In furtherance of its plan to upgrade and construct new and existing wastewater treatment facilities, Wheeling entered into a subagreement for engineering services with the civil and sanitary engineering firm of Stearns and Wheler (Stearns) in November 1972. Under this subagreement, the amount of the basic fees for engineering services was to be calculated on a percentage of the total construction cost basis. Beginning in January 1976, Wheeling applied for and received approval for Step I and Step II grants. The grant agreement between plaintiff and EPA for actual construction of the project, Step III, was entered into in September 1977.

However, on March 1, 1976, the EPA promulgated 40 C.F.R. § 35.937–1, which prohibited cost-plus-percentage-of-cost and percentage-of-construction-cost contracts.[1] The regulation stated that in most cases, a cost-reimbursement type of contract is appropriate. In response to the regulation, Wheeling began renegotiating its engineering subagreement with Stearns to change the basis of computing compensation from the percentage-of-construction-cost method to a cost-plus-fixed-fee method of compensation. On March 26, 1979, Wheeling submitted a letter to the West Virginia Department of Natural Resources (DNR) to advise them of anticipated increases in the costs of engineering services under its proposed new contract with Stearns. The letter, which was forwarded to EPA's Region III office, requested engineering fees based upon increased construction costs attributable to a twelve month delay between the time the original estimates were made and the actual taking of bids. EPA's Region III office denied this request on July 5, 1979.

On May 29, 1979, plaintiff's renegotiation efforts with Stearns culminated in a new engineering subagreement reflecting the cost-plus-fixed-fee method. Under the new subagreement, engineering fees rose by $275,000. Neither Region III nor DNR was given notice of the renegotiated agreement prior to May 29, 1979.

After comparing the scope and extent of the engineering services provided for in the two subagreements, Region III concluded that no additional services were being offered under the May, 1979 subagreement. On December 27, 1979, the EPA informed Wheeling that it would not enlarge the amount of grant funds. Region III also noted that Wheeling's failure to obtain prior EPA approval of the renegotiated subagreement was a violation of 40 C.F.R. § 35.937–6(b) which requires prior approval of renegotiated subagreements in excess of $100,000. Region III issued a Final Decision denying further requests for enlargement in February 1981.

Wheeling initiated an administrative appeal which culminated in a Board of Assistance Appeals (Board) decision on October 31, 1983. The Board found that Region III improperly based its decision not to honor the 1979 subagreement on a comparison between the two subagreements. It stated that Region III should have evaluated the

---

1. That regulation provides that "[c]ost-plus-percentage-of-cost and percentage-of-construction-cost contracts are prohibited. Cost reimbursement, fixed price, or per diem contracts or combinations of these may be negotiated for architectural or engineering services. A fixed price contract is generally used only when the scope and extent of work to be performed is clearly defined. In most other cases, a cost reimbursement type of contract is more appropriate...."

reasonableness of the later subagreement under the procedures set forth in Appendix D ¶ A(2)(b)(4). But for Wheeling's violation of 40 C.F.R. § 35.937–6(b), in not seeking prior approval of the subagreement, the Board stated it would have remanded the appeal to the EPA for an Appendix D analysis of the reasonableness of the 1979 subagreement. The Board concluded, however, that Region III correctly found noncompliance with 40 C.F.R. § 35.937–6(b) to be a sufficient reason to reject the 1979 subagreement. It stated:

> To overrule the Region on this point we would have to grant a deviation from the regulations which we cannot do since that is the prerogative which is within the sole discretion of the Director of the Grants Administration Division.

Pursuant to 40 C.F.R. §§ 30.1001–30.1005, on July 27, 1984, Wheeling submitted to the EPA a Request for a Deviation from 40 C.F.R. § 35.937–6(b). On April 22, 1985, the Director of the Grants Administration Division (Director) denied the request because Wheeling failed to obtain prior approval. The Director determined that Wheeling's explanation of an oversight during a period of peak administrative activity was an inadequate justification for the deviation, given the fundamental nature of the requirement for prior approval of changes in project scope.

*Jurisdiction*

■ Plaintiff originally filed this action in the United States District Court for the Northern District of West Virginia. On June 29, 1988, it was transferred to this Court. In response to defendant's Motion to Dismiss, District Judge Gray relied on *Portsmouth Redevelopment & Housing Authority v. Pierce,* 706 F.2d 471 (4th Cir. 1983) to hold that the United States Claims Court had exclusive jurisdiction. He noted that the "critical circumstances in this case are almost identical" to *Portsmouth* in that both suits involve claims against the United States to recover money allegedly wrong-

fully withheld. *City of Wheeling v. EPA,* No. 85–0134–W, slip op. at 1–2 (N.D.W.Va. June 29, 1988). Citing *Portsmouth,* Judge Gray stated, "Claims Court jurisdiction cannot be avoided by framing an essentially monetary claim in injunctive or declaratory terms."

Although neither plaintiff nor defendant raised the jurisdictional issue since this suit was transferred, this Court *sua sponte* addressed the question [2] and requested in its Order dated October 19, 1989 that the parties brief the jurisdictional impact of the recent United States Supreme Court decision, *Bowen v. Massachusetts,* 487 U.S. 879, 108 S.Ct. 2722, 101 L.Ed.2d 749 (1988). *Bowen* involved money grants from the Department of Health and Human Services (HHS) to states that provide health care to needy persons. The HHS grants in the Medicaid program are authorized by Title XIX of the Social Security Act, 42 U.S.C. § 1396. Participating states develop individual programs describing conditions of eligibility and categories of medical assistance available. The mechanics of the federal financial participation (FFP) under Title XIX involve a "stream of revenue" in the form of quarterly advance payments based on a state's estimates of anticipated future expenditures. Adjustments to reflect actual spending are made in subsequent payments. *Bowen v. Massachusetts,* 487 U.S. 879, 108 S.Ct. 2722, 2726–2727, 101 L.Ed.2d 749 (1988). The Supreme Court held in *Bowen* that sections 702 and 704 of the Administrative Procedure Act (APA) did not preclude the federal district courts from reviewing an HHS decision disallowing reimbursement to the State of Massachusetts for a category of expenditures under the Medicaid grant program. Both parties assert, and this Court now finds, that review of this action is not inconsistent with the Supreme Court's ruling in *Bowen.*

I.

Plaintiff's claim for damages in this suit stems from a sewerage grant program and

---

**2.** It is well settled that this Court may examine its own jurisdiction at any time. *See Berdick v. United States,* 222 Ct.Cl. 94, 99, 612 F.2d 533, 536 (1979); *Wheeler v. United States,* 3 Cl.Ct. 686, 689 (1983).

its related agency regulations. In cases involving federal grant funds that are made available to various governmental and private organizations, jurisdiction has historically been in the Claims Court. *Kentucky ex rel. Cabinet for Human Resources v. United States*, 16 Cl.Ct. 755 (1989); *see, e.g., Idaho Migrant Council, Inc. v. United States*, 9 Cl.Ct. 85 (1985), *aff'd*, 802 F.2d 471 (Fed.Cir.1986) (proceedings to enforce the obligations involved in a federal grant program aimed at promoting the expansion of minority enterprise in the United States are within the Tucker Act jurisdiction of the Claims Court); *Texas v. United States*, 537 F.2d 466, 210 Ct.Cl. 522 (1976) (claim for funds in accordance with a federal disaster assistance agreement were reviewable in the Claims Court).

Under the authority granted in the Tucker Act, the Claims Court may review any claim founded "upon the Constitution, or, any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). Typically, this Court's jurisdiction over claims that arise from federal grant programs "has been founded on the Tucker Act's contract authority, and on Acts of Congress mandating money payment." *Kentucky ex rel. Cabinet for Human Resources v. United States*, 16 Cl.Ct. 755, 761 (1989).

In *Kentucky ex rel. Cabinet for Human Resources v. United States*, 16 Cl.Ct. 755 (1989), Senior Judge Harkins relied on the contract authority to determine that the Claims Court had jurisdiction to rule on a claim against HHS for costs associated with state enforcement of child support obligations. The role of HHS in the preparation, approval and administration of the program created a contractual relationship between HHS and the Commonwealth of Kentucky. Despite the stream of revenue-type financing mandated by the Social Security Act for this program, Senior Judge Harkins determined that Claims Court jurisdiction was proper because of the Tucker Act's historical inclusion of contract claims. Under a breach of contract theory, entitle-

ment to a money judgment is created by the enforcement of a contractual obligation. "The money awarded would be compensation for the Government's failure to act in accordance with the agreements." *Marathon Oil Company v. United States*, 16 Cl.Ct. 332, 342 (1989). In this case, defendant asserts a breach of contract claim for money damages on the grounds that defendant allegedly required it to renegotiate its engineering contract, and then refused to pay the damages which resulted (Amended Complaint ¶¶ 4–7, 9–10, 21–24). Plaintiff does not seek specific performance for delivery of monies which would have been due in the absence of an alleged breach of contract. Rather, plaintiff claims that it incurred greater liability, and was therefore damaged when defendant failed to fulfill a contract based obligation to pay it for changing its position. Furthermore, 33 U.S.C. § 1283(a)(1) deems the EPA Administrator's approval of Wheeling's grant funded sewerage project a contractual obligation of the Government for its proportional contribution to the project. Accordingly, this case falls under the historical authority of the Tucker Act allowing the Claims Court to review any claim founded upon an express or implied contract with the United States.

## II.

■ Claims Court jurisdiction is not governed by the APA. *Kentucky ex rel. Cabinet for Human Resources v. United States*, 16 Cl.Ct. 755 (1989) (citing *Wathen v. United States*, 527 F.2d 1191, 1198 n. 6, 208 Ct.Cl. 342 (1975). Accordingly, *Bowen* should not have a direct bearing on the jurisdictional aspects of this case. *Bowen* established that the District Court has jurisdiction to review an agency decision disallowing a federal grant. It did not address the question of whether the District Court's jurisdiction was exclusive. However, by holding that the District Court could provide complete relief on a disallowance claim—including declaratory relief as to past agency action, injunctive relief as to future agency action, and specific relief to enforce a statutory mandate for the pay-

ment of money—the Court called into question the validity of the precedent on the scope of Claims Court jurisdiction. The dicta in *Bowen* further clouded the issue: "As a threshold matter, it is not altogether clear that the Claims Court would have jurisdiction under the Tucker Act ... to review a disallowance claim." *Bowen v. Massachusetts,* 487 U.S. 879, 108 S.Ct. 2722, 2738 n. 42, 101 L.Ed.2d 749 (1988). The Supreme Court also noted that the legislative history of the APA expressly included grant-in-aid programs within the types of governmental activities to which Section 702's waiver of sovereign immunity applies, and therefore opened them to District Court review.[3]

To determine whether the relief sought in a suit involving a federal grant-in-aid program should be characterized as money damages or as specific relief in the form of a money award, the *Bowen* court looked to the relationship between the government and the grantee. While Tucker Act jurisdiction in the Claims Court is available to compensate for a specific, past injury, the District Court is a proper forum for litigation involving "relationships ... that occur over time and that involve constantly shifting balance sheets." *Bowen v. Massachusetts,* 487 U.S. 879, 108 S.Ct. 2722, 2737 n. 39, 101 L.Ed.2d 749 (1988). The stream of revenue-type relationship found in *Bowen,* with its advanced payments and subsequent adjustments, involved an ongoing, open account. Reviewing the lower courts' decisions concerning that type of relationship, the Supreme Court noted that the

District Court's order was not a money judgment and "did not purport to be based on a finding that the Federal Government owed Massachusetts ... any amount of money." *Bowen v. Massachusetts,* 487 U.S. 879, 108 S.Ct. 2722, 2740, 101 L.Ed.2d 749 (1988). The claim sought a declaration of entitlement to grant money in anticipation of future projects and relief that was primarily prospective in nature. The Supreme Court therefore concluded that the state was seeking a specific relief which is properly reviewable in the District Court.

This case concerns a money claim based upon an individual grant agreement involving a wastewater treatment project. Unlike *Bowen,* this claim is for entitlement to grant money for an isolated project which has been completed, and one that seeks purely retroactive relief. *See Massachusetts v. Departmental Grant Appeals Board,* 815 F.2d 778 (1st Cir.1987) (APA's waiver of sovereign immunity was held to not apply to a suit involving a grant-in-aid program where the requested relief was unlikely to have any significant prospective effect). Rather than an open account and an ongoing relationship, plaintiff asks for a one-time payment of an amount of money as compensation for EPA's refusal to reimburse it for engineering fees in violation of a contractual obligation. Since Wheeling's relationship with the Government is not a continuous one, and since it seeks a remedy which is retroactive in nature (monetary compensation for an injury to property), the relief sought constitutes "money damages" and is properly before this Court.[4]

---

**3.** Recognizing that review by the Claims Court is proper only if a claim for money presently due exists, the Supreme Court in *Bowen* distinguished money damages under the Tucker Act and monetary relief available in the District Court:

> Our cases have long recognized the distinction between an action at law for damages—which is intended to provide a victim with monetary compensation for an injury to his person, property, or reputation—and an equitable action for specific relief—which may include an order providing for the reinstatement of an employee with back pay, or for the recovery of specific property or monies, ejectment from land, or injunction either directing or restraining the defendant officer's actions. *Larson v. Domestic and Foreign Commerce*

*Corp.,* 337 U.S. 682, 688, 69 S.Ct. 1457, 1460, 93 L.Ed. 1628 (1949).... The fact that a judicial remedy may require one party to pay money to another is not a sufficient reason to characterize the relief as "money damages". *Bowen v. Massachusetts,* 487 U.S. 879, 108 S.Ct. 2722, 2731–2732, 101 L.Ed.2d 749 (1988).

**4.** Further evidence of the character of plaintiff's claim is our determination that 33 U.S.C. § 1281(g) "can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained." *United States v. Mitchell,* 463 U.S. 206, 217, 103 S.Ct. 2961, 2968, 77 L.Ed.2d 580 (1983). Mirroring the language in *Mitchell,* the *Bowen* Court stated:

> To determine whether one may bring, pursuant to Tucker Act jurisdiction, a "claim

In *Bowen*, the authority for the grant program provides that the Secretary "shall pay" to a state with an approved plan. 42 U.S.C. § 1396b(a). In contrast, 33 U.S.C. § 1281(g)(1) does not use express language and is not money mandating on its face. It simply authorizes the Administrator to make grants for the construction of publicly owned treatment works. Once approval is given and a contractual obligation exists, however, 33 U.S.C. § 1283(b) and (c) provide that the Administrator "shall" make periodic payments and, after completion of the project, "shall pay" the unpaid balance of the Federal share. Accordingly, the statute plaintiff relies upon can fairly be interpreted as mandating compensation by the Government.

Recognizing that the underlying statute in *Bowen* was money mandating, the Supreme Court held where the authorizing statute of a grant-in-aid program directs payments be made to subsidize future state expenditures, a subsequent suit is for enforcement of that statute. Under 42 U.S.C. § 1396, enforcement of the statute would require the payment of money. *Bowen v. Massachusetts*, 487 U.S. 879, 108 S.Ct. 2722, 2735, 101 L.Ed.2d 749 (1988). The same holding does not apply in this case. Rather than subsidizing a future expense, § 1281(g) provides compensation for past labors. Under the *Bowen* analysis, a claim for money based on a past wrong or past labor does not seek to enforce a statutory mandate. Rather, it asks for money in compensation for the damages sustained by the failure of the Government to pay as required. Accordingly, plaintiff's claim is based upon an underlying statute which can fairly be interpreted as mandating compensation by the Federal Government for

against the United States founded ... upon ... any Act of Congress," [28 U.S.C. 1491] "one must always ask ... whether the ... legislation which the claimant cites can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained". (citations omitted) ... These laws attempt to compensate a particular class of persons for past injuries or labors. *Bowen v. Massachusetts*, 487 U.S. 879, 108 S.Ct. 2722, 2738, 101 L.Ed.2d 749 (1988).

It follows from this language that relief in an action based upon a money mandating statute

damages sustained; is a claim for money damages under the Tucker Act; and as such, is a claim properly before this Court. Accordingly, this Court will review and decide plaintiff's claim.

## DISCUSSION

▮▮▮ A principal purpose of the summary judgment procedure is "to isolate and dispose of factually unsupported claims or defenses." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–324, 106 S.Ct. 2548, 2552–2553, 91 L.Ed.2d 265 (1986). It is designed to achieve judicial economy by saving time and expense when trial is unnecessary. Disposition by summary judgment is appropriate when there is no genuine issue as to any material fact, *Curtis v. United States*, 168 F.Supp. 213, 216, 144 Ct.Cl. 194 (1958), *cert. denied*, 361 U.S. 843, 80 S.Ct. 94, 4 L.Ed.2d 81 (1959), and the moving party is entitled to a judgment as a matter of law. RUSCC 56(c). The burden of demonstrating that there is no material fact in dispute lies with the movant. This burden may be met by a showing that there is no evidence to support the non-moving party's case. *Sweats Fashions, Inc. v. Pannill Knitting Co.*, 833 F.2d 1560, 1563 (Fed.Cir.1987). Once the movant has made a proper showing, the burden shifts to the adverse party to provide evidence of specific facts in dispute. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Mere allegations or denials of his pleadings are not sufficient. In sum, summary judgment is appropriate where the record taken as a whole would not lead a rational trier of fact to find for an adverse party. *First National Bank v.*

would fall within the *Bowen* definition of "money damages," *Bowen v. Massachusetts*, 487 U.S. 879, 108 S.Ct. 2722, 2735 n. 39, 101 L.Ed.2d 749 (1988), which the Claims Court has the authority to provide. In its analysis of statutory mandates, the *Bowen* Court sought to distinguish "a suit seeking money in compensation for the damage sustained by the failure of the Federal Government to pay as mandated," and an action seeking to enforce the statutory mandate itself. *Bowen v. Massachusetts*, 487 U.S. 879, 108 S.Ct. 2722, 2735, 101 L.Ed.2d 749 (1988).

*Cities Service Co.,* 391 U.S. 253, 254, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968).

An administrative determination will not be set aside unless it is arbitrary, capricious or an abuse of discretion. *Missouri Health and Medical Organization, Inc. v. United States,* 641 F.2d 870, 226 Ct.Cl. 274 (1981). In applying this standard, the reviewing court looks to the administrative record already in existence. If its conclusions are not supportable on that record, the decision must be vacated and remanded to the agency for further consideration. *Camp v. Pitts,* 411 U.S. 138, 143, 93 S.Ct. 1241, 1244, 36 L.Ed.2d 106 (1973) (citing *SEC v. Chenery Corp.,* 318 U.S. 80, 63 S.Ct. 454, 87 L.Ed. 626 (1943)).

In this case, each party asserts that plaintiff's claim may be resolved as a matter of law since there are no material factual issues in dispute. The court agrees. Therefore, the court finds that disposition of this case is appropriate based upon the parties' cross-motions for summary judgment.

Plaintiff concedes that it did not formally seek EPA's approval before it entered into the new subagreement.[5] The fundamental issue, therefore, is whether the Director's denial of plaintiff's request for a deviation from the prior approval requirement was arbitrary and capricious and an improper exercise of his discretion. Plaintiff argues that changes in EPA regulations forced the renegotiation of its engineering services contract, and therefore, EPA's refusal to accept that contract is arbitrary on its face. It further asserts that the new contract was in compliance with all applicable Agency regulations. Accordingly, EPA would not have had the discretion to deny its request for deviation if the prior approval requirement had been met. Thus, it argues that EPA should accept the new agreement notwithstanding plaintiff's failure to timely seek prior approval of that agreement.

There is no indication nor has plaintiff alleged that EPA has treated plaintiff any differently from EPA's treatment of other applicants. To the contrary, logic suggests that the granting of plaintiff's application after the fact might have the effect of prejudicing similar projects in other localities which are in competition for limited grant funds.

It is not necessary for the court to determine whether plaintiff's renegotiation with Stearns was a requirement of the new regulations. 40 C.F.R. § 35.937–6(b) clearly provides that renegotiation of any subagreement which results in a contract price in excess of $100,000 must be approved by EPA before any grant money can be awarded. While plaintiff was entitled to seek a deviation from 35.937–6(b), there was no guarantee that it would be granted one. In his final decision the Director found that "Wheeling has not adequately justified its failure to obtain prior approval for the change in the A/E agreement."[6] Because the new subagreement involved a significant increase in federal funds, the prior approval requirement becomes extremely important. Such approval is far from automatic. To hold that plaintiff is entitled to an upward adjustment in its contract price without an increase in the scope of services to be rendered would deprive EPA of its necessary control over substantial expenditures of limited grant funds. Under the Clean Water Act, EPA's authority to award grants is subject to compliance with general goals and policies including application of its provisions so as to make the "best use of available manpower and funds." *People of California v. United States Environmental Protection Agency,* 689 F.2d 217, 221 (D.C.Cir.1982) (quoting 33 U.S.C. § 1251(f)).

Prior approval for substantial contract renegotiations has the dual purpose of permitting EPA to maintain control over large expenditures of limited grant funds and of protecting the grantee from the uncertainty of EPA grant funding before the grantee commits itself to large contractual obligations.

---

**5.** Plaintiff's Amended Complaint ¶ 8.

**6.** AR Tab 6, p. 1.

Even if plaintiff had sought prior approval, EPA would not have been obligated to grant fund the additional costs of the new agreement. In fact, under the circumstances of this case, plaintiff's application to increase the award, had it been timely filed, might justifiably have been denied solely because an award of additional grant funds, without the provision of additional services by Stearns, was unjustified and in conflict with the intent of applicable statutory requirements.

While plaintiff has not specifically contended that a municipality's duty to meet Clean Water Act discharge standards is tied to a municipality's right to additional grant funding, it should be noted that that argument has no merit. The Clean Water Act, which sets forth Congressional policy concerning water pollution prevention and control, requires that all municipalities meet discharge standards for sewerage. 33 U.S.C. § 1313. It also provides that EPA is authorized to make grants to any municipality for the construction of treatment works. 33 U.S.C. § 1281(g). There is no connection, however, between a municipality's receipt of grant funding and that municipality's duty to meet the discharge standards. The Clean Water Act's "effluent limitations are, on their face, unconditional; and no other provision indicates any link between their enforceability and the timely receipt of federal assistance." *State Water Control Bd. v. Train,* 559 F.2d 921, 924 (4th Cir.1977).

Wheeling's assertion that EPA did not have actual discretion is in conflict with 33 U.S.C. § 1281(g) which authorizes, but does not require, the Administrator to make grants to any municipality for the construction of publicly owned sewerage treatment works. If § 1281(g) gives EPA the discretion to provide financial aid for the initial construction of treatment plants, it would be inconsistent to hold that EPA has no discretion to refuse to enlarge the grant for the same project. The Director's refusal to excuse plaintiff's error in failing to comply with 40 C.F.R. § 35.937–6(b) may be set aside only if it was arbitrary, capricious or an abuse of discretion. Under the undisputed facts presented in this case, the court finds that the Director's decision was not arbitrary, capricious, or an abuse of his discretion, but was entirely reasonable.

Wheeling contends that if its motion for summary judgment is denied, it should be granted the right to conduct discovery on its due process claim. Specifically, Wheeling argues that the Director, in his decision not to grant a deviation, placed too much emphasis on his disagreements with the Board of Assistance Appeals regarding whether Wheeling was required to renegotiate its 1972 engineering contract; and, that the agency's consideration of the 1979 engineering contract was based upon inappropriate factors. Plaintiff contends that in these areas of disagreement, it was never given notice that such topics would be considered and therefore did not have an opportunity to be heard. Plaintiff has not cited any supporting authority in this regard.

The court finds that plaintiff is not entitled to further discovery on its due process claims and that EPA's final decision in this case dated April 22, 1985, which simply denied the requested deviation for failure to seek prior approval, was based upon appropriate factors. The Director's decision was limited to the issue of whether Wheeling adequately justified its failure to seek prior approval under 40 C.F.R. 35.937–6(b)(2). Any discussion in the Director's decision relating to the requirement for renegotiation of the subagreement by virtue of 40 C.F.R. § 35.937–1 was not part of the basis of the deviation denial. This discussion following the decision not to grant a deviation was simply not essential to disallowing the deviation request, since prior EPA approval before renegotiation is an independent requirement separate from the issue of whether it is required that the contract ultimately be renegotiated.[7]

---

7. Indeed, the EPA's Board of Assistance Appeals decision, upon which plaintiff relies, correctly stated that Wheeling's failure to obtain prior approval of the 1979 subagreement was a sufficient reason, *standing alone,* to disallow additional grant funding.

Furthermore, additional discovery on the due process claims is unwarranted.[8] The United States Supreme Court has held that review of agency action is limited to the agency record. Thus, in general this court does not review such a case *de novo* in the absence of specific statutory authorization. *Federal Power Commission v. Transcontinental Gas Pipe Line Corp.*, 423 U.S. 326, 331, 96 S.Ct. 579, 582, 46 L.Ed.2d 533 (1976); *Consolo v. Federal Maritime Com*, 383 U.S. 607, 619, 86 S.Ct. 1018, 1026, 16 L.Ed.2d 131 (1966). It is not proper in the type of limited review this proceeding permits to analyze the Director's mental processes, especially since the court finds that his conduct, from review of the record before it, whatever his subjective thought processes may have been, was reasonable and was adequately premised upon Wheeling's failure to seek prior approval. *See United States v. Morgan*, 313 U.S. 409, 422, 61 S.Ct. 999, 1004, 85 L.Ed. 1429 (1941); *Coalition on Sensible Transportation, Inc. v. Dole*, 826 F.2d 60 (D.C.Cir. 1987). Therefore, the court denies Wheeling's unsupported request for discovery on its due process claims and on the adequate record before it, finds no evidence of any due process violation by defendant.

## CONCLUSION

For the reasons stated in this Opinion, plaintiff's motion for summary judgment is denied and defendant's motion for summary judgment is granted. The Clerk is directed to enter judgment for defendant and dismiss plaintiff's complaint. No costs.

IT IS SO ORDERED.

---

**8.** Wheeling has complained it did not receive a copy of the director's decision until it received a letter notice approximately two months after the decision. Since Wheeling never requested a copy of the decision, and since Wheeling was not injured as a result (Wheeling was notified of the basis of the deviation denial by letter), these aspects of its due process claim must fail. *See Costle v. Pacific Legal Foundation*, 445 U.S. 198, 214–220, 100 S.Ct. 1095, 1105–1108, 63 L.Ed.2d 329 (1980); *County of Del Norte v. United States*, 732 F.2d 1462, 1467 (9th Cir.1984).