**COLE COUNTY REGIONAL SEWER DISTRICT, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 249–88L.

United States Claims Court.

Feb. 7, 1991.

---

Mark W. Comley, Jefferson City, Mo., attorney of record for plaintiff. Hawkins, Brydon, Swearengen & England, P.C., of counsel, Jefferson City, Mo.

Jon M. Lipshultz, Washington, D.C., with whom was Asst. Atty. Gen. Richard B. Stewart, for defendant. Julie Simpson and Patricia Gillispie Miller, U.S. E.P.A., of counsel, Washington, D.C.

## OPINION

FUTEY, Judge.

This case is before the court for review of an administrative agency decision. Plaintiff, Cole County Regional Sewer District (RSD), contends that the United States Environmental Protection Agency (EPA) committed an abuse of discretion in refusing to award plaintiff additional grant funding under the Clean Water Act, 33 U.S.C. § 1251 *et seq.* (CWA). Defendant maintains that the EPA decision to withhold this funding was entirely consistent with applicable regulations and longstanding EPA policy, and should, therefore, not be disturbed by the court. For the reasons stated below, the court grants summary judgment in favor of defendant and denies plaintiff's motion for summary judgment.[1]

### Factual Background

This case involves a series of grants authorized by the EPA to finance an areawide wastewater treatment system located in Missouri. Under Title II of the CWA, the EPA Administrator may award federal grants to a municipality for the construction of publicly-owned wastewater treatment works. 33 U.S.C. § 1281 *et seq.* These grant funds are appropriated by Congress on an annual basis and allotted to the states in accordance with section 205 of the CWA. 33 U.S.C. § 1285(c). The funds

---

1. Although plaintiff has entitled its submission "Brief of Plaintiff," the parties agree that plaintiff's claim may be resolved as a matter of law since there are no genuine issues of material fact in the case. Defendant's opposition, p. 2; transcript (tr.) pp. 3–4. The court will, therefore, treat plaintiff's and defendant's submissions as cross-motions for summary judgment. Tr. p. 4.

are, thereafter, obligated to individual projects within the state. In order to receive funding for a proposed project, the costs of that project must be allowable under Appendix A of Subpart I, 40 C.F.R. Part 35. In addition, a municipality must submit a detailed application to the state. The state must certify that the project is entitled to intrastate priority. The state may not certify a project for grant assistance unless the application meets various requirements set forth in the regulations. 40 C.F.R. § 35.2100 *et seq.* The EPA is ultimately responsible for determining whether the project meets the requisite criteria for grant award as established by statute and regulation. 33 U.S.C. §§ 1281(a), 1283, and 1284. The Administrator's approval of a municipal application is "deemed a contractual obligation of the United States for the payment of its proportional contribution to such project." 33 U.S.C. § 1283(a)(1).

Plaintiff submitted an application for a construction works grant to the Missouri Department of Natural Resources (MoDNR). Plaintiff sought funding for a project known as the Gray's Creek Wastewater Collection Facilities Project, which involved the construction of a series of wastewater treatment works in the Gray's Creek area. The project was designed to eliminate wastewater discharges in the Binder Basin watershed by rerouting them to a Jefferson City treatment facility for eventual discharge in the Missouri River. In April of 1983, Doug Garrett, a MoDNR representative, wrote to RSD concerning the project and related the following:

It is the state's opinion that the most critical problem facing the RSD will be acquiring the flow of the Binder Basin Sewer Company service area. We have been informed in the past that the RSD would obtain acquisition; if the RSD fails to do this future grant funding will be jeopardized. Also, failure to acquire the flow of the Sewer Company service area could result in the recovery of the previous Step 3 grant by the EPA.

Administrative Record (A.R.) No. 28c.

Mr. Garrett further advised RSD by letter of May 10, 1983:

To clarify our position, we expect the District to assume the flow of the Binder Basin Sewer Company Area, *not the entire company.* It is our understanding that you will pursue this matter by initiating negotiations with the Company. [Emphasis added.]

A.R. No. 28d.

In an effort to develop a regional wastewater treatment program, the MoDNR and the Missouri Clean Water Commission (Commission) issued a priority certification to the EPA on behalf of plaintiff on September 20, 1983.[2]

Plaintiff received several construction grants under Title II of the CWA for an interceptor and force main system. This system was developed to intercept the Binder Basin sewer flow and direct the flow to the Jefferson City secondary treatment facility.[3] The Binder Basin Sewer Company (Binder Basin) was a privately-owned company located within the Cole County regional sewer district. The Binder Basin facility consisted of a three cell lagoon, a mechanical plant, and sewer connection lines. The facility discharged into streams flowing into Binder Lake. Two of these grants, issued to RSD on October 12, 1983 and September 14, 1984, contained the following condition: "[t]he flow from Bind-

---

**2.** The Missouri Department of Natural Resources (MoDNR) certification stated in part:

This project is needed to abate pollution of the waters of the state and also to abate a serious public health hazard. The construction of the project will involve an excessive financial burden on the municipality therefore federal funds are necessary.

\*     \*     \*     \*     \*     \*

This project involves the elimination of numerous wastewater treatment facilities, rang-

ing from single cell lagoons to extended aeration mechanical treatment plants. The state has established that effluent from the existing facilities is causing water quality problems in Binder Lake, a recreational and wildlife area outside of Jefferson City.

Administrative Record (A.R.) No. 1 at pp. 1–2.

**3.** A.R. No. 34 at 2.

er Basin Sewer Company will be eliminated."[4]

Following EPA approval, RSD initiated negotiations with Binder Basin in an effort to meet the conditions imposed by the two grants. Binder Basin rejected all proposals for a leasing or "joint control" arrangement between the two concerns, and insisted that RSD purchase the entire facility from the company. RSD's negotiation efforts eventually resulted in the acquisition of the Binder Basin plant in 1986 for $205,700.00.[5]

On February 7, 1984, RSD filed a request with MoDNR for an increase in grant funds under grant number C290932–04 in order to cover the cost of acquiring the Binder Basin facility. MoDNR denied the request on March 26, 1984, concluding that RSD was not eligible for such funding under the regulations then in effect. Under those regulations, the purchase of an existing wastewater works was a compensable cost only if "[t]he acquisition, in and of itself, considered apart from any upgrade, expansion or rehabilitation, provide[d] new pollution control benefits." 40 C.F.R. § 35.2350, App. A (1984).[6] Following discussions between MoDNR and RSD representatives, MoDNR agreed to reconsider the March 26, 1984, decision. On August 1, 1984, MoDNR upheld its previous determination that the costs associated with the purchase of Binder Basin were ineligible for grant participation. In the decision, MoDNR concluded that RSD's acquisition of Binder Basin would not, in and of itself,

provide new pollution control benefits and, therefore, was not an "allowable cost" under 40 C.F.R. Part 35, Subpart I, App. A (1984).

RSD appealed the MoDNR decision to the EPA pursuant to 40 C.F.R. Part 30, Subpart L. On November 27, 1984, the disputes decision official of the EPA upheld the MoDNR final decision of August 1, 1984. The disputes decision official determined that MoDNR incorrectly applied the 1984 regulations, rather than the 1982 regulations in effect at the time of grant award, in reaching his decision. The disputes decision official nevertheless sustained the MoDNR decision as consistent with EPA policy memoranda issued prior to grant award. RSD appealed this decision to the Regional Administrator, EPA Region VII, on December 13, 1984. The Regional Administrator appointed a panel to review the decision. The panel conducted an informal conference with RSD to discuss the eligibility issue. At the conference, RSD challenged the propriety of MoDNR's inclusion of the grant condition for the first time. The Regional Administrator affirmed the disputes decision official's denial of grant funding for Binder Basin on January 2, 1987. The Administrator further ruled that RSD untimely raised the question of the propriety of the grant condition on appeal.[7] On January 13, 1987, RSD requested discretionary review of the Regional Administrator's decision. The Assistant Administrator for Water denied this request on September 21, 1987.[8]

---

**4.** A.R. No. 2 at 5; A.R. Nos. 15, 16, 17. Plaintiff's amended complaint seeks relief under grant number C290932–04, which was issued on October 12, 1983.

**5.** Tr. pp. 6–7. The record indicates that RSD purchased Binder Basin on July 31, 1986, for $200,000.00, plus the assumption of a $5,700.00 promissory note. Plaintiff's Brief, App. IV at 3.

**6.** The 1984 regulations modified the language of the 1982 regulatory standards. The 1982 regulations predicated grant eligibility in part on whether "[t]he acquisition provides new pollution control benefits" and did not contain the phrase "in and of itself, considered apart from any upgrade, expansion, or rehabilitation." 40 C.F.R. Part 35, Subpart I, App. A, section D(1)(e)(1) (1982).

**7.** Defendant contends that plaintiff is precluded from challenging MoDNR's inclusion of the grant condition in this court since applicable EPA regulations required RSD to first raise this argument before the state and EPA disputes decision official in order to preserve the argument on appeal. 40 C.F.R. §§ 30.1220–30.1235. However, plaintiff stated during oral argument that RSD does not challenge the propriety of the grant condition in the instant suit. Tr. p. 15. Therefore, the court need not address whether MoDNR's inclusion of the grant condition was proper.

**8.** If, as here, the EPA Assistant Administrator fails to exercise his discretionary review, the Regional Administrator's decision becomes the final administrative determination of the EPA. 40 C.F.R. §§ 30.1200–30.1235.

On November 20, 1987, RSD filed an action in the United States District Court for the Western District of Missouri, seeking review of the EPA's determination. Upon plaintiff's motion, the case was subsequently transferred to this court on April 26, 1988. On May 24, 1988, plaintiff filed a "Complaint for Judicial Review of Agency Action." Plaintiff amended the complaint on August 8, 1988. On September 18, 1990, plaintiff filed a "brief" with this court, contending that the EPA's determination that RSD was ineligible for CWA grant funding for the purchase of Binder Basin was arbitrary, capricious, and inconsistent with the regulations. Defendant filed an "Opposition to Plaintiff's Motion for Summary Judgment" on October 10, 1990. Defendant asserts that EPA's decision to deny plaintiff additional grant funding for the purchase of the wastewater treatment facility was based on a reasonable interpretation of applicable regulations, and should, therefore, not be overturned by the court. The court held oral argument in this case on December 11, 1990.

### Jurisdiction

■ Under the Tucker Act, the Claims Court may review all claims founded "upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a). In the present case, plaintiff claims monetary damages under a wastewater treatment grant program. This court has historically asserted jurisdiction over cases involving federal grant funds under the Tucker Act. *See Kentucky ex rel. Cabinet for Human Resources v. United States*, 16 Cl.Ct. 755 (1989), and cases cited therein.

In *Bowen v. Massachusetts*, 487 U.S. 879, 108 S.Ct. 2722, 101 L.Ed.2d 749 (1988), the Supreme Court held that federal district courts have jurisdiction under 28 U.S.C. § 1331 and the Administrative Procedure Act (APA), 5 U.S.C. §§ 702 and 704, to review a Department of Health and Human Services (DHHS) decision disallowing reimbursement of various state expenditures under the Medicaid grant program. Under Title XIX of the Social Security Act, 42 U.S.C. § 1396 et seq., the DHHS issues grant funding for state medical assistance programs for needy individuals. The state programs are funded by a "stream" of advance quarterly payments with subsequent adjustments to correspond with actual spending. In holding that federal district courts have jurisdiction to grant complete relief in grant disallowance cases, the Court did not address Court of Claims or Federal Circuit precedent concerning Tucker Act jurisdiction, but admonished: "[a]s a threshold matter, it is not altogether clear that the Claims Court would have jurisdiction under the Tucker Act ... to review a disallowance claim." *Bowen*, 487 U.S. at 905–06, n. 42, 108 S.Ct. at 2738, n. 42.

In *Wheeling v. United States*, 20 Cl.Ct. 659 (1990), the court asserted jurisdiction over a claim for damages stemming from the same grant program as the present case. In *Wheeling*, the court reviewed an EPA decision denying a municipality additional grant funding for costs associated with the renegotiation of an engineering services contract. The court reasoned that the action involved a breach of contract claim for money damages, rather than declaratory or injunctive relief, and therefore fell within the court's jurisdiction over claims "founded upon an express or implied contract with the United States." *Id.* at 663. Following a thorough analysis of the jurisdictional impact of *Bowen*, the court concluded:

> This case concerns a monetary claim based upon an individual grant agreement involving a wastewater treatment project. Unlike *Bowen*, this claim is for entitlement to grant money for an isolated project which has been completed, and one that seeks purely retroactive relief. [Citations omitted]. Rather than an open account and an ongoing relationship, plaintiff asks for a one-time payment of an amount of money as compensation for EPA's refusal to reimburse it for engineering fees in violation of a contractual obligation. Since Wheeling's relationship

with the Government is not a continuous one, and since it seeks a remedy which is retroactive in nature (monetary compensation for an injury to property), the relief sought constitutes "money damages" and is properly before this Court. *Id.* at 664.

The court agrees with the approach taken in *Wheeling* and concludes that jurisdiction is proper in the present case. As in *Wheeling,* plaintiff claims entitlement to additional grant funding for a wastewater treatment project. This entitlement is predicated on EPA's contractual obligation to pay its "proportional contribution to such project." 33 U.S.C. § 1283(a)(1). Furthermore, unlike the federal/state relationship necessitated by the "stream of revenue" adjustments under the Medicaid grant program in *Bowen,* plaintiff maintains no continuing grant relationship with the EPA. Rather, plaintiff seeks monetary compensation for past injury, contending that EPA violated its contractual obligations by failing to reimburse RSD for the acquisition of Binder Basin. As such, plaintiff advances a claim for money damages under the Tucker Act.

### Summary Judgment

Summary judgment is appropriate where the pleadings raise no genuine dispute as to any material fact and, as a matter of law, the moving party is entitled to judgment. RUSCC 56; *Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2509, 91 L.Ed.2d 202 (1986). The moving party bears the burden of establishing an absence of evidence to support the nonmovant's case. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). The party opposing summary judgment has the burden of showing sufficient evidence, not necessarily admissible, of a genuine issue of material fact in dispute. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Any doubt over factual issues must be resolved in favor of the party opposing summary judgment, *Litton Indus. Prods., Inc. v. Solid State Sys. Corp.,* 755 F.2d 158, 163 (Fed.Cir.1985), to whom the benefit of all

presumptions and inferences runs. *H.F. Allen Orchards v. United States,* 749 F.2d 1571, 1574 (Fed.Cir.1984), *cert. denied,* 474 U.S. 818, 106 S.Ct. 64, 88 L.Ed.2d 52 (1985).

To grant summary judgment in the present case, the court must determine, as a matter of law, whether the EPA's denial of plaintiff's request for additional funding under the CWA was proper. The court is presented with questions of statutory and regulatory interpretation. The court may rule on such interpretations as a matter of law. *McKart v. United States,* 395 U.S. 185, 198, 89 S.Ct. 1657, 1665, 23 L.Ed.2d 194 (1969).

### Standard of Review

An administrative determination may not be overturned by the court unless "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Under this standard of review, the court must accord substantial deference to an agency decision, particularly in areas committed to the agency's technical expertise. *Marsh v. Oregon Natural Resources Council,* 490 U.S. 360, 109 S.Ct. 1851, 104 L.Ed.2d 377 (1989). This court has previously stated that "[a] department's interpretation of a statute it administers must receive considerable deference by a reviewing court." *Ocean Technology, Inc. v. United States,* 19 Cl.Ct. 288, 291 (1990). In reviewing an administrative decision, the court must not substitute its own judgment for that of the agency. *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971). Rather, the court may overturn conclusions reached by an agency only if the decision cannot be supported by the administrative record. *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984); *EPA v. National Crushed Stone Assoc.,* 449 U.S. 64, 101 S.Ct. 295, 66 L.Ed.2d 268 (1980).

### Discussion

■ The sole issue before the court is whether the EPA properly denied addition-

al funding to RSD under grant C290932–04 for the acquisition of the Binder Basin facility. Appendix A to 40 C.F.R. Part 35, Subpart I, provides EPA policy guidance for determining the allowability of wastewater treatment projects under the CWA. It is undisputed that the May 1982, regulations govern RSD's eligibility for additional grant funding since these regulations were in effect at the time of initial grant award. Appendix A provided at the time of grant issuance:

1. Allowable costs for land and rights-of-way include:

\* \* \* \* \* \*

e. The cost of acquiring all or part of an existing publicly or privately owned wastewater treatment works provided all the following criteria are met:

(1) **The acquisition provides new pollution control benefits**; [Emphasis added.]

(2) The facility was not built with previous Federal or State financial assistance;

(3) The primary purpose of the acquisition is not the reduction, elimination or redistribution of public or private debt; and

(4) The acquisition is not being used as a means to circumvent the requirements of the Act [CWA], these regulations, or other Federal, State, or local requirements.

40 C.F.R. Part 35, Subpart I, Appendix A (1982).

Both plaintiff and the EPA agree that RSD's acquisition of Binder Basin meets criteria (2) through (4). Therefore, the only issue in dispute is whether the purchase of Binder Basin provides "new pollution control benefits" under the first criterion.[9]

Plaintiff contends that the EPA's interpretation of section D(1)(e)(1) of Appendix A was unduly restrictive. Plaintiff maintains that the EPA effectively concluded that the acquisition of Binder Basin, in and of itself, would not provide new pollution control benefits. In other words, plaintiff avers that the EPA imposed a grant eligibility requirement not present in the 1982 version of section D(1)(e)(1) when it determined that the acquisition of Binder Basin would provide no new pollution control benefits. Plaintiff further states that the elimination of the Binder Basin discharge clearly provided "new pollution control benefits," otherwise, such a condition would never have been placed in the RSD grant.[10] Plaintiff concludes that "MoDNR's insistence that the [Binder Basin] company be eliminated in one form or the other, juxtaposed by the EPA's and MoDNR's refusal to acknowledge the pollution control benefits which would accrue because of its acquisition amply demonstrates the unreasonableness of the [EPA and MoDNR] interpretation."[11]

Under the CWA, EPA is authorized to award grant funding for public wastewater treatment facilities in accordance with the general goals and policies of the Act. *Wheeling*, 20 Cl.Ct. at 666. The CWA does not specify the type of acquisitions subject to grant funding. Rather, section 201(g) of the CWA vests broad discretion in the EPA to select funding priorities that optimize "available manpower and funds." 33 U.S.C. § 1251(f). Congress has, therefore, provided the EPA with considerable latitude to allocate funds in a "manner which will achieve the most progress in water quality at the least cost" in furtherance of the "prevention, reduction, and elimination of pollution." *Id.;* 33 U.S.C. § 1251(b).

The EPA, like all government agencies, is subject to funding constraints and must effectuate policy objectives with available resources. The EPA determined that the limited grant funding available for water pollution control would be maximized through the construction of wastewater

9. A.R. Nos. 13, 21 at 2, 34 at 3.

10. At oral argument, plaintiff stated:
If [the acquisition of Binder Basin] would not provide new pollution control benefits, then it would not make sense for Missouri DNR to insist that—be eliminated. I think that alone is fact enough to warrant the court's conclusion that the pollution control benefits would have been obtained from the acquisition.
Tr. p. 9.

11. Brief of Plaintiff, p. 18.

treatment facilities. Such facilities would provide additional pollution controls and thereby promote the goals of the CWA. By contrast, the mere transfer of ownership of a treatment facility, without more, would provide no additional pollution control benefits. The EPA therefore decided that grant funding should only be available to municipalities for construction of wastewater treatment facilities that provide new pollution control benefits, not for the acquisition of such pre-existing facilities. In so doing, the EPA acted within the discretion afforded it under the CWA. Given the evidence at hand, the court finds that EPA reasonably concluded that the purchase of treatment facilities which add nothing to overall wastewater treatment are not eligible for grant funding.

The EPA established a grant funding policy which favored the construction of new facilities over the purchase of existing facilities prior to the 1982 regulations. In a 1981 memorandum,[12] Henry L. Longest II, EPA Deputy Administrator for Water Program Operations, provided the following policy statement:

> The acquisition of all or part of an existing wastewater treatment system usually provides no water pollution control benefits in addition to those already being provided prior to the acquisition, and thus is generally not eligible for grant assistance under Section 201.

A.R. No. 21d at 2.

The EPA originally promulgated Appendix A to 40 C.F.R. Part 35, Subpart I, in 1982. The EPA stated that the Appendix A guidelines memorialized prior agency policy statements. 47 Fed.Reg. 20,455 (May 18, 1982). The 1982 version of section D(1)(e)(1) of Appendix A was, therefore, written to restate EPA policy that acquisitions of existing facilities are not grant-eligible unless they provide new, additional pollution control benefits. Since this policy clearly existed prior to the 1982 regulations, it follows that the 1984 amendment to section D(1)(e)(1) functioned to clarify

existing requirements, not to impose more stringent grant eligibility standards. In other words, the EPA's interpretation of section D(1)(e)(1) was consistent with the way the regulation was drafted. The EPA's interpretation of its own regulations is given considerable deference and this court will overturn such an interpretation only if "plainly erroneous" or "inconsistent with the regulation." *Robertson v. Methow Valley Citizen's Council,* 490 U.S. 332, 109 S.Ct. 1835, 104 L.Ed.2d 351 (1989); *Summit Contractors v. United States,* 21 Cl.Ct. 767 (1990). Contrary to plaintiff's assertion, the court finds that the EPA properly construed section D(1)(e)(1) to require that the Binder Basin acquisition provide pollution control services not previously available to the community in order to be eligible for grant funding.

Plaintiff further asserts that RSD's purchase of Binder Basin would in fact generate new pollution control benefits since the Binder Basin flow was rerouted to another wastewater treatment plant. However, plaintiff confuses the pollution control benefits resulting from the entire Gray's Creek project with the benefits derived from the acquisition of Binder Basin. In the 1981 policy memorandum previously cited, Deputy Administrator Longest stated:

> Where a project includes the acquisition of an existing wastewater treatment works, the upgrade or expansion portions of the project do provide additional water pollution control benefits. In those circumstances, the upgrade or expansion portions of the project are eligible for a section 201 grant, while the acquisition portion generally is not.

The Gray's Creek project encompassed numerous wastewater treatment facilities, including Binder Basin. As a whole, the Gray's Creek project provided new pollution control benefits through the construction of interceptor sewers and pumping stations which redirected the Binder Basin watershed flow to the Jefferson City

---

12. Further evidence of this longstanding policy is contained in a 1978 decision in which the Deputy Assistant Administrator for Water denied grant funding to a regional sewer district for the acquisition of a privately-owned sewer facility. A.R. No. 21b.

plant.[13] However, the acquisition of the Binder Basin facility itself provided no new control benefits. The distinction drawn by the EPA between costs of acquiring facilities and costs of upgrading and expanding acquired facilities is entirely reasonable and in accordance with CWA goals of achieving the greatest water pollution control at the lowest cost.

Plaintiff also argues that the elimination of the flow from the Binder Basin facility improved the water quality of Binder Lake.[14] However, plaintiff provides no evidence that the Binder Basin facility posed a significant pollution hazard to Binder Lake. Rather, plaintiff maintains that MoDNR's inclusion of the grant condition, *ipso facto*, demonstrates that the threat to Binder Lake was significant. The record indicates that Binder Basin was at all relevant times in compliance with MoDNR effluent standards.[15] This negates plaintiff's argument that the purpose of the Binder Basin acquisition was to protect Binder Lake from environmental risk. Furthermore, as plaintiff concedes, the Binder Basin acquisition helped effectuate MoDNR's policy of regionalization of wastewater treatment systems. Such policy was well within the discretion of MoDNR and EPA in implementing the CWA grant program. It is, therefore, apparent that MoDNR did not include the grant condition to improve pollution control of Binder Lake. Absent any further evidence in the record to the contrary, the court concludes that the EPA did not abuse its discretion in determining that the Binder Basin acquisition did not constitute a "new pollution control benefit" under section D(1)(e)(1). Accordingly, the court holds that the EPA correctly determined that RSD's purchase of Binder Basin was not an allowable cost under the CWA grant program.

### Conclusion

For the foregoing reasons, the court finds that the EPA decision to deny RSD additional grant funding was not arbitrary, capricious, an abuse of discretion, or contrary to statute or regulation. The court, therefore, denies plaintiff's request for relief and grants summary judgment in favor of defendant. The Clerk is directed to dismiss the amended complaint. No costs.

---

**13.** Defendant does not contest this point. In its decision of August 1, 1984, MoDNR stated:

The Department understands how the district can conclude that construction of an interceptor to eliminate the existing sewer company discharges will provide additional pollution control benefits, even though the existing discharges are apparently meeting effluent limits and no water quality standards violations have been noted. We certainly agree that the Gray's Creek project will have a pollution control benefit for the basin. However, the Department does not believe that acquisition of these facilities, in and of itself, will achieve any new pollution control benefit.
A.R. No. 13 at 1–2.

**14.** Plaintiff related at oral argument:

The existing [Binder Basin] facility was a three cell lagoon and a mechanical treatment plant. In the state certification for the grant, Binder Lake, which is located approximate to Binder basin Sewer Company was in jeopardy of getting—greater demands on it. It was environmentally at risk. By eliminating the flow from Binder Basin sewer company, the risk to the lake would be eliminated, therefore, that would be a new kind of [pollution] control. A control that would prevent the environmental risk to Binder Lake.
Tr. p. 10–11.

