**IDAHO MIGRANT COUNCIL, INC.,
aka Idaho Business Development
Organization**

v.

**The UNITED STATES.**

No. 608–82C.

United States Claims Court.

Oct. 22, 1985.

Dennis H. Milbrath, Boise, Idaho, for plaintiff.

Joseph T. Casey, Jr., Washington, D.C., with whom was Acting Asst. Atty. Gen. Richard K. Willard, for defendant. M. Timothy Conner, Washington, D.C., U.S. Dept. of Commerce, of counsel.

## MEMORANDUM OF DECISION

HARKINS, Judge:

The Idaho Migrant Council, Inc. (IMC), plaintiff, is a non-profit corporation. Its complaint, filed November 26, 1982, seeks $36,000 for termination of a grant from the Minority Business Development Agency (MBDA) of the Department of Commerce, and the case is before the court on cross-motions for summary judgment. The parties filed a joint stipulation of facts on November 8, 1983. Although plaintiff, in its opposition to defendant's cross-motion for summary judgment disputes a fact asserted by defendant and claims a trial is necessary, the material facts are not in dispute, and summary judgment is appropriate.

MBDA is an agency of the Department of Commerce whose mission is to assist and to promote the expansion of minority enterprise in the United States pursuant to Exec.Order No. 11,625, 3 C.F.R. 616 (1971–75 Comp.). MBDA coordinates government actions at state and local levels; it operates, in part, through the services of Business Development Organizations (BDO) organized at the local level.

The purposes of a BDO include: (1) promote the development and increase minority business enterprise starts in growth areas of the economy; (2) strengthen existing minority business enterprises; (3) provide training to entrepreneurs in functional areas of business administration; and (4) provide management services and technical assistance (MS & TA) to upgrade the financial, marketing, and management skills of minority business entrepreneurs.

In August 1979, MBDA issued a Request for Applications (RFA) to procure BDO services in Idaho for a 12-month period beginning October 1, 1979. Plaintiff's proposal was evaluated highest of four responses, and on September 22, 1979, plaintiff accepted a grant in the amount of $75,000 to provide the services of the Idaho BDO for a 12-month period to begin on October 1, 1979.

The RFA specified services would be provided by a staff limited to three named positions. Under the RFA, the services to be provided by this staff were to be performed for the entire calendar year beginning on October 1, 1979. RFA Special Requirement No. 4 provided:

The offeror's proposal shall include a completed time performance plan (TPP) and a staff time allocation plan delineating the various percentages of staff time allocated to work items and special program effort set forth in the BDO scope of work.

The RFA provided an estimated level of effort for the 1-year term. This effort included:

The government estimates that this project will require approximately three (3) man-years of effort to accomplish the following minimum performance accomplishments over the proposed 12 month period:

| Performance Measure | Total for Year |
|---|---|
| Total Client Intake | 70 |
| * Clients Assisted | 50 |
| Number of Loans, Bonds, Lines of Credit | |
| submitted | 24 |
| approved | 16 |
| Dollar Value of Loans, Bonds, Lines of Credit | |
| submitted | $1,200,000 |
| approved | 800,000 |
| Number of Procurement Actions | |
| submitted | 48 |
| approved | 30 |
| Dollar Value of Procurement Actions | |
| submitted | $2,400,000 |
| approved | $1,500,000 |
| Intake/MS&TA Hours | 1080 |

Plaintiff's proposal submitted a TPP that showed, for the first quarter:

| | |
|---|---|
| Total number of clients to be assisted | 6 |
| Total number of clients to be assisted with M & TA | 4 |
| Total number of manhours to be provided to clients | 135 |

On November 6, 1979, the regional director in MBDA's San Francisco office notified plaintiff's executive director that he was concerned that the Idaho BDO was not staffed and operating and that no business advisory board had been formed. Plaintiff was reminded that plaintiff had proposed the quarterly goals that were in the grant, that the first quarter would end as of December 31, 1979, and that a review would be made at that time of plaintiff's performance.

On November 14, 1979, plaintiff informed MBDA's regional director that the business advisory board had been formed, and that recruitment for a director for the Idaho BDO was continuing. The letter said plaintiff was "experiencing difficulties in staffing the Idaho Business Development Organization."

On November 30, 1979, the MBDA program officer advised the regional director that plaintiff had not provided a staff for the Idaho BDO and it was not operational. Further, the memorandum stated plaintiff

had not been able to provide a start date for providing BDO services.

On December 7, 1979, plaintiff's executive director met with MBDA's representatives in the San Francisco office. On December 31, 1979, the regional director by memorandum instructed the program officer that, based on the meeting, he should watch plaintiff's progress and be prepared to commence termination proceedings if plaintiff "does not meet its agreement with us."

On December 11, 1979, plaintiff submitted the resume of Ramon Leon and requested MBDA approval to hire him as executive director for the Idaho BDO. By letter dated January 11, 1980, MBDA approved. The Idaho BDO executive director was not on site until January 22, 1980.

On January 18, 1980, the program officer recommended to the regional director that the award to plaintiff be terminated immediately. The regional director concurred on that same day. The recommendation noted:

> Despite a diligent effort to recruit BDO staff for the Idaho Project, IMC has been unable to deliver an operational BDO by the deadline. There have been no benefits to potential clients in Idaho due to lack of staff in the first quarter which ended December 31, 1979. There is virtually no chance that goals for the second quarter will be met as no staff has been hired as of January 18, 1980.

On January 31, 1980, the regional director forwarded a recommendation to MBDA's Washington headquarters that the grant be terminated for cause. This letter noted that plaintiff had failed to hire adequate staff, that there had been no benefits for potential clients, and that "first quarter goals have not been met." The letter also included the following summary:

> A conference was held in San Francisco Regional Office on December 7, 1979, at which time verbal assurance was given by the grantee that staff and service was forthcoming. It is now certain that performance is no longer redeemable. The grantee's proposal did reflect positions

descriptions and documentation to substantiate an acceptable staffing pattern in support of program goals and scope of work activities. The technical evaluation team positively addressed this issue. However, the proposed staff has not been obtained and, therefore, termination action is being requested.

On February 15, 1980, IMC by letter requested a meeting in San Francisco on February 26, 1980. This request was denied on March 10, 1980, in a letter that notified plaintiff that the San Francisco office had started action to terminate the grant arrangement, and that it was under consideration by headquarters officials. Plaintiff was cautioned to "maintain a low rate of expenditure during the interim period."

On March 26, 1980, plaintiff was notified that the grant was being terminated for cause effective April 4, 1980. The notice stated:

> This termination action is the result of IMC's failure to hire staff and provide the services required by the award. This nonperformance occurred despite the positive efforts exerted by the staff of the MBDA San Francisco Regional Office during a conference with you on December 7, 1979.

On November 18, 1980, plaintiff sent to MBDA its list of expenditures in the amount of $47,474. After audit, $24,340 in costs were questioned and costs of $23,144 were accepted. Plaintiff had received $25,000 under the grant, and, the audit report concluded, MBDA was owed $1,846. On September 13, 1983, plaintiff paid $1,846 to the Department of Commerce.

## DISPOSITION

Plaintiff contends that summary judgment is not proper in this case because statements defendant contends were made in the December 7, 1979, conference are in dispute and that this factual issue should be resolved by trial. The disputed fact is whether plaintiff's executive director was advised on December 7, 1979, "if he did not

field a full staff and begin operating the BDO by January 18, 1980, then MBDA would proceed to terminate the grant."

A movant for summary judgment has the burden of showing the absence of genuine issues as to any material facts. *Adickes v. Kress*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). A material fact is one which will make a difference in the result of a case. *See Curtis v. United States*, 144 Ct.Cl. 194, 199, 168 F.Supp. 213, 216 (1958), *cert. denied*, 361 U.S. 843, 80 S.Ct. 94, 4 L.Ed.2d 81 (1959).

■ A material issue of fact is not created by the suggestion of the opposing party that a genuine issue might arise if the matter were permitted to go to trial. A motion for summary judgment, when properly supported, may not be defeated by conclusory allegations or denials from the pleadings. The opposition must be supported by affidavits or other materials as permitted in the rules. RUSCC 56; *Royal Indemnity Co. v. United States*, 371 F.2d 462, 465, 178 Ct.Cl. 46 (1967). The basic purpose of the summary judgment procedure is one of judicial economy—to save the time and expense of a full trial when it is unnecessary. When the material facts are adequately developed in the motion papers, a full trial is useless. "Useless" in this context means that more evidence than is already available in connection with the motion for summary judgment could not reasonably be expected to change the result. *Pure Gold, Inc. v. Syntec (USA), Inc.* 739 F.2d 624, 626 (Fed.Cir.1984); *U.S. Steel Corp. v. Vasco Metals Corp.*, 394 F.2d 1009 (CCPA 1968).

Defendant's motion for summary judgment is supported by the affidavit of MBDA's Deputy Director, by the RFA and the grant documents, and by relevant MBDA internal records. Although no transcript of the December 7, 1979, meeting is presented, the respective parties' versions of the terms of the warning to plaintiff, in any event, would not control the outcome of this case. Defendant's supporting materials make it clear that on December 7, 1979, plaintiff was given positive notice that MBDA was concerned over plaintiff's failure to staff the Idaho BDO, its non-existent first quarter performance, and the need to show an ability to perform in the second quarter. As of January 18, 1980, it was apparent that plaintiff had failed to provide the services, or to erect the organization, for which grant funds had been obtained.

Plaintiff's opposition does not point to factual allegations in the complaint that defendant has failed to counter. Nor do the facts presented by defendant raise an inference that must be resolved in plaintiff's favor. There are no unexplained gaps in the materials that support defendant's motion that fail to meet the allegations critical to plaintiff's claim. Defendant's support for its motion, when viewed in the light most favorable to plaintiff, is sufficient to show the absence of a genuine issue of fact. *Adickes v. Kress*, 398 U.S. at 158, 90 S.Ct. at 1608. In this case there is no issue as to the material facts; summary judgment is appropriate.

■ The United States, for public purposes, has undertaken numerous programs to make grant funds available to various governmental and private organizations. Many hundreds of grants are made each year to states, municipalities, schools and colleges and other public and private organizations. The initial determination to undertake and fund a grant program is an exercise of sovereign power and the grant itself is a gratuity. It is well established that the Federal Government is not liable for damages resulting from sovereign acts performed by it in its sovereign capacity. *Horowitz v. United States*, 267 U.S. 458, 461, 45 S.Ct. 344, 345, 69 L.Ed. 736 (1925); *Smally and Sons v. United States*, 372 F.2d 505, 507, 178 Ct.Cl. 593, *cert. denied*, 389 U.S. 835, 88 S.Ct. 45, 19 L.Ed.2d 97 (1967). Obligations of the United States assumed in the programs to implement the sovereign determination, however, are within this court's Tucker Act jurisdiction. 28 U.S.C. § 1491 (1982). *City of Manasass Park v. United States*, 633 F.2d 181, 184, 224 Ct.Cl. 515 (1980). In proceedings to

89

enforce the obligations in a grant, the government is bound only by its express undertakings. *Missouri Health and Medical Organization, Inc. v. United States,* 641 F.2d 870, 873–74, 226 Ct.Cl. 274 (1981); *State of Texas v. United States,* 537 F.2d 466, 470–71, 210 Ct.Cl. 522 (1976).

The United States, when it makes a grant, must abide by the terms of the grant instrument and comply with applicable regulations. The MBDA has no codified regulations. Accordingly, the obligations of the parties here are defined by the terms of the formal instrument, and by the requirements of Office of Management and Budget (OMB) Circulars Nos. A–102 and A–110. 41 Fed.Reg. 32,016, 32,030 (1976).

Article 4 of the General Terms and Conditions of the MBDA grant provides:

4. *Termination of Award for cause*

a. The AO may terminate the award, in whole or in part by written notice to the recipient at any time before the ending date whenever the AO determines based on written findings that the recipient has failed to satisfactorily;

(1) provide the services and/or perform other requirements described in the Scope of Work; or

(2) comply with the other requirements, terms or conditions of the award.

The recipient shall be provided with a copy of the findings that support the determination to terminate.

b. Termination of the award will not invalidate noncancellable commitments or obligations properly incurred by the recipient prior to the date of termination.

▮ Plaintiff argues that the March 26, 1980, termination notice was defective because it was not based on specific findings as to the factual conditions extant on January 18, 1980, when the recommendation to terminate first was made. Plaintiff further argues that, since MBDA had not visited the site between December 7, 1979,

and March 10, 1983, it had no basis to conclude the grant should be terminated.

Plaintiff's grant was terminated because it failed to meet its obligations with respect to start up and promised first quarter performance. These reasons were clearly stated in the March 10, 1980, letter that cautioned plaintiff to maintain a low rate of expenditure during the period the termination was being processed.

The March 26, 1980, official termination notice included these findings: the termination action is (1) the result of plaintiff's failure to hire staff, and (2) plaintiff's failure to provide the services required by the award. This notice provided plaintiff the written findings, as required by the termination clause in the instrument, upon which the termination was based.

OMB Circular A–110 requires the federal sponsoring agency to notify the recipient in writing of the determination to terminate, the reasons for the termination, and the effective date. In this case, the OMB requirements were satisfied.

Plaintiff was informed fully and completely of the reasons for the termination. Defendant's materials in support of its cross-motion for summary judgment demonstrate plaintiff's inability to provide the services for which the grant was made. Plaintiff's assertion that fair notice was not given is not reasonable.

Plaintiff was advised in the RFA that it was to commence operations and to begin providing services on October 1, 1979, the effective date of the grant. The grant was awarded on that explicit expectation. On December 7, 1979, after 2 months of a 12-month grant had expired, no staff had been hired to run the Idaho BDO notwithstanding MBDA's constant insistence. By January 18, 1980, although an executive director had been appointed, he was not on site, no other staff had been hired, and the Idaho BDO still was not functioning.

Plaintiff complains that MBDA had made no site visits, and that as of March 10, 1980, the second quarterly report was not due. Plaintiff argues that site visits, or a

hearing, were required before MBDA would know the facts. It is clear from the motion papers that defendant was informed about conditions at the site.

The parties stipulate that neither the grant instrument nor the regulations required MBDA to make site visits before terminating for cause. Nothing in the formal instrument, or in the regulations, required MBDA to hold a hearing either before or after termination. MBDA action to terminate for cause without a hearing or formal review process in the circumstances was proper. MBDA was in possession of evidence concerning plaintiff's noncompliance with the terms of a discretionary grant. *See Silva v. East Providence Housing Authority*, 565 F.2d 1217, 1220, 230 Ct.Cl. 647 (1st Cir.1977).

Plaintiff also contends that an additional $36,000 of grant funds should be paid because of defendant's violations of the due process clause of the 5th Amendment. The Court of Claims has held consistently that there is no jurisdiction over claims for money based upon the government's alleged violation of the due process clause. *Inupiat Community of the Arctic Slope v. United States*, 680 F.2d 122, 132, 230 Ct.Cl. 647 (1982); *Conservative Caucus, Inc. v. United States*, 650 F.2d 1206, 228 Ct.Cl. 45 (1981); *Mack v. United States*, 635 F.2d 828, 225 Ct.Cl. 187 (1980), *cert. denied*, 451 U.S. 913, 101 S.Ct. 1988, 68 L.Ed.2d 304 (1981).

For the foregoing reasons, plaintiff's motion for summary judgment is DENIED; and defendant's cross-motion is ALLOWED. The Clerk is directed to dismiss the complaint. Defendant's counterclaim, which plaintiff paid on September 13, 1983, shall be dismissed.