Commonwealth of PENNSYLVANIA
DEPARTMENT OF PUBLIC
WELFARE, Plaintiff,

v.

The UNITED STATES, Defendant,

No. 99–386C.

United States Court of Federal Claims.

Feb. 28, 2001.

Jason W. Manne, Pittsburgh, PA, attorney of record for plaintiff.

Elizabeth G. Candler, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, DC, for defendant, with whom were Mark A. Melnick, Assistant Director; David M. Cohen, Director; David W. Ogden, Acting Assistant Attorney General. Michael Leonard, U.S. Department of Health and Human Services, Philadelphia, PA, of counsel.

**OPINION**

DAMICH, Judge.

I. Introduction

This case is before the Court on Defendant's motion to dismiss for lack of subject matter jurisdiction or, in the alternative, Defendant's motion to dismiss for failure to state a claim upon which relief can be granted. The Commonwealth of Pennsylvania seeks an amount in excess of $75 million because of the refusal of the United States Department of Health and Human Services (HHS) to pay invoices related to juvenile justice services pursuant to Title IV–A of the Social Security Act, which refusal Plaintiff claims is a breach of contract arising out of a

State Plan prepared pursuant to a funding grant under Title IV–B of the Social Security Act. Because the Court finds that Plaintiff has failed to allege any facts that, if proven, would establish that the State Plan is a contract binding on the United States, the Court GRANTS Defendant's motion to dismiss for failure to state a claim upon which relief can be granted.

## II. Discussion

### A. Motion to Dismiss for Failure to State a Claim

Defendant has moved to dismiss either for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Rules of the Court of Federal Claims (RCFC) or for failure to state a claim upon which relief can be granted pursuant to RCFC 12(b)(4). Although the Court agrees that Plaintiff's complaint should be dismissed, the appropriate inquiry is whether Plaintiff has stated a claim upon which relief can be granted. *See Trauma Service Group v. United States*, 104 F.3d 1321, 1325 (Fed.Cir.1997). The Tucker Act provides the Court of Federal Claims with jurisdiction over claims against the United States founded either upon the Constitution, an Act of Congress, a regulation of an executive department, or upon an express or implied contract with the United States. 28 U.S.C. § 1491(a)(1). "The party invoking jurisdiction has the burden to show compliance with the Tucker Act." *Trauma Service Group*, 104 F.3d at 1324. Generally, "a well pleaded allegation in the complaint is sufficient to overcome challenges to jurisdiction." *Id.* at 1325. In this case, Plaintiff bases its claim upon a contract with the United States. This allegation is enough to confer subject matter jurisdiction in this Court. *See Id.* (allegation in complaint that claim was based upon contract was enough to confer subject matter jurisdiction in the Court of Federal Claims). A claim does not fail for lack of jurisdiction merely because its success is doubtful. *Bell v. Hood*, 327 U.S. 678, 682, 66 S.Ct. 773, 90 L.Ed. 939 (1946). "Failure to state a proper cause of action calls for a judgment on the merits and not for a dismissal for want of jurisdiction." *Id.* Therefore, this Court will address whether Plaintiff has stated a claim upon which relief can be granted.

### B. Standard of Review

"A motion to dismiss under Rule 12(b)(4) for failure to state a claim upon which relief can be granted is appropriate when the facts asserted by the claimant do not under the law entitle him to a remedy.... In reviewing the dismissal under Rule 12(b)(4), we are mindful that we must assume all well-pled factual allegations as true and make all reasonable inferences in favor of ... the non-movant." *Perez v. United States*, 156 F.3d 1366, 1370 (Fed.Cir.1998). "Dismissal under Rule 12(b)(4) is appropriate only when it is beyond doubt that the plaintiff can prove no set of facts in support of his claim [that] would entitle him to relief.... Because granting such a motion summarily terminates the case on its merits, courts broadly construe the complaint, particularly in light of the liberal pleading requirements under the Federal Rules of Civil Procedure." (citations omitted; internal quotation marks omitted.) *Ponder v. United States*, 117 F.3d 549, 552–53 (Fed.Cir.1997), cert. denied, 522 U.S. 1110, 118 S.Ct. 1040, 140 L.Ed.2d 106 (1998).

### C. Factual Background

Plaintiff applied for a federal grant for child and family services under Title IV–B of the Social Security Act. *See* Am. Compl. ¶ 5; *See also* A9–99. As required by the grant program, Plaintiff submitted a 5–year State Plan based on HHS guidelines, which, according to Plaintiff, was jointly developed between the Commonwealth and HHS. As evidenced by the signature of the Acting Regional Administrator, the State Plan was approved on August 11, 1995. *See* A7–75. Plaintiff received notice of approval of the State Plan on September 14, 1995. *See Compl. Ex. B.* Plaintiff then received all the grant money it was entitled to under Title IV–B.

On September 12, 1995, the Office of Family Assistance of HHS issued an Action Transmittal which established that effective January 1, 1996, federal financial participation would not be "available under the Emergency Assistance program for costs as-

sociated with providing benefits or services to children in the juvenile justice system." A103. After the effective date, Defendant denied payment of invoices submitted by Plaintiff under the Emergency Assistance program for services related to juvenile justice services, which, Plaintiff admits, were Title IV–A funds.

Plaintiff contends that by refusing to pay the invoices related to juvenile justice services pursuant to Title IV–A, Defendant breached the Title IV–B grant agreement embodied in the State Plan. Plaintiff makes the connection between Title IV–A funds and the Title IV–B State Plan, arguing that the Office of Family Assistance had authority over the Emergency Assistance program, and had previously agreed that such funds could be used to support the Title IV–B programs and be included in the Title IV–B planning process. Am. Compl. ¶ 10. In short, Plaintiff argues that the Title IV–B State Plan is a contract within this Court's jurisdiction that obligated Defendant to pay Title IV–A funds.[1]

Because Plaintiff is trying to obtain Title IV–A funds through Title IV–B, its case is strengthened insofar as the connection between Title IV–B and Title IV–A can be enhanced. This seems to be the reason why, without informing the Court, Plaintiff changed the statutory basis of its claim from subpart 2 (42 U.S.C. § 629 *et seq.*) to subpart 1 (42 U.S.C. § 620 *et seq.*) of Title IV–B.[2] The Omnibus Budget Reconciliation Act of 1993 restructured Title IV–B of the Social Security Act by creating subpart 2, entitled "Family Preservation and Support Services," which authorized capped entitlement funds to states for family services. Pub.L. 103–66; 42 U.S.C. § 629 *et seq.* (1993). Title IV–B also contains subpart 1, entitled "Child Welfare Services." 42 U.S.C. § 620 et seq. State plans under subpart 1 currently are required to "provide for coordination between the services provided for children under the plan and the services and assistance provided ... under the State program funded under part A of this subchapter." 42 U.S.C. § 622(b)(2); *See also* Am. Compl. ¶ 10. The parties dispute whether there was a requirement to coordinate services under subpart 1 with programs funded under part A at the time the State Plan was submitted.

In addition, there is some confusion in the State Plan itself as to whether it was prepared pursuant to subpart 1 or 2. The Court notes that the documents in the State Plan requesting Title IV–B funds refer only to subpart 2 funds, i.e., 42 U.S.C. § 629. *See* A73–75. Section 620 deals with subpart 1 funds and the record does not contain a budget request for such funds. *See* A73–75. However, in the introduction of the State Plan, it states, "this plan will address the planning requirements of Parts 1 and 2 of Title IV–B." A11.

But, since the Court holds that the State Plan is not a contract for purposes of Tucker Act jurisdiction for the reasons stated below, it does not matter whether the State Plan is pursuant to subpart 1 or 2. Even if the State Plan required the government to pay Title IV–A funds, the government is not contractually bound by the State Plan.

**D. The State Plan is not a contract for purposes of the Tucker Act**

As Plaintiff notes in its brief, to establish a contract under the Tucker Act, a claimant must prove four elements: (1) lack of ambiguity in offer and acceptance; (2) mutuality of intent to contract; (3) sufficient conduct by a government representative having actual authority to bind the government in contract; and (4) consideration. *Nevin v.*

---

**1.** Because Plaintiff seeks Title IV–A funds under the authority of Title IV–B rather than Title IV–A, Plaintiff does not allege jurisdiction pursuant to a money mandating statute. *See Tr.* at 30. Plaintiff's arguments are based solely upon a theory of a contract with the United States Government. *Id.*

**2.** Plaintiff changed the statutory basis of its claim in the guise of conforming its complaint to the scope of the arguments that it had made in opposing Defendant's motion to dismiss. Absent objection, the Court granted Plaintiff leave to amend its complaint so that it would conform to the scope of the arguments made in its opposition to Defendant's motion to dismiss. Plaintiff, however, exceeded the leave granted. The Court denied Defendant's motion to strike portions of the amended complaint but allowed Defendant to file a supplemental brief.

*United States,* 43 Fed.Cl. 151 (1999), aff'd. 232 F.3d 912, 2000 WL 366280 (Fed.Cir. 2000). Plaintiff contends that if allowed to introduce extrinsic evidence, it will be able to prove these elements. However, to withstand a motion to dismiss for failure to state a claim, the Plaintiff must at least *allege* some facts that, if proven, would establish the elements of its claim. *See Peterson v. Atlanta Hous. Auth.,* 998 F.2d 904, 912 (11th Cir.1993) (Rejecting plaintiff's argument that she should have had opportunity to develop facts in support of her claim, court of appeals affirmed district court's dismissal of plaintiff's liberty interest claim where plaintiff failed to allege facts supporting her claim. "A court's duty to liberally construe a plaintiff's complaint in the face of a motion to dismiss is not the equivalent of a duty to rewrite it for her.") Since all four elements are necessary to state a contract claim, the inability to allege some facts to establish any one of them will doom Plaintiff's claim.

Plaintiff has failed to allege facts which, if proven, would establish that the relevant government representative had authority to bind the government in contract.

 A government representative must have actual authority to bind the government in contract. Although Plaintiff does not mention it in either its amended complaint or its brief, actual authority can be either express or implied. *H. Landau & Co. v. United States,* 886 F.2d 322, 324 (Fed.Cir.1989); *See also California Sand and Gravel, Inc. v. United States,* 22 Cl.Ct. 19, 27 (1990), aff'd. 937 F.2d 624, 1991 WL 112816 (Fed.Cir. 1991), cert. denied, 502 U.S. 1057, 112 S.Ct. 934, 117 L.Ed.2d 105 (1992). An agent has express authority "only when the Constitution, a statute, or a regulation grants it in unambiguous terms." *Howard v. United States,* 31 Fed.Cl. 297, 312 (1994). An agent is granted implied actual authority when authority to bind the government " 'is considered to be an integral part of the duties

assigned to a government employee.' " *Landau,* 886 F.2d at 324; (quoting J. Cibinic & R. Nash, Formation of Government Contracts 43 (1982)). *Landau* gives little more guidance than this on the nature of implied actual authority, since on remand the Claims Court found no implied actual authority after inquiring further into the facts that the Federal Circuit thought had suggested such authority.[3]

*California Sand & Gravel,* casts some light onto the concept of implied actual authority:

> The court is of the opinion that, in some circumstances, a person with some limited actual authority impliedly may have broader authority. However, a person with no actual authority may not gain actual authority through the court-made rule of implied actual authority .... The most the court can do is interpret the limited authority of an authorized person in a broader manner than ordinarily would be the case.

22 Cl.Ct. at 27.'

In its amended complaint, the only instances in which Plaintiff mentions authority are in ¶¶ 8 and 10.

 In ¶ 8 the complaint states: "An HHS staff person from the Region III office of the Administration for Children and Families was a member of the team of individuals who developed the plan and was authorized to negotiate on behalf of the Federal government." Am. Compl. ¶ 8. This allegation, however, does not suggest that the government official was vested with either express or implied actual authority to bind the government in contract. It only establishes that the parties complied with the statutory requirement that the plan be jointly developed. *See* 42 U.S.C § 622(a). Joint development, also known as joint planning, means State and Federal analysis and review of child

---

**3.** In *Landau,* the Federal Circuit remanded the case to the Claims Court, because the Claims Court had focused solely on express authority. The Federal Circuit felt that, since the contract in question delegated administration of the contract to a local office of the government agency and since employee Harris in that office was autho-

rized to write checks on a joint bank account, it was possible that Harris had implied authority to bind the government when he guaranteed payment to Landau to the extent of money in the bank account. On remand, however, the Claims Court held that Harris did not have authority to bind the government. 20 Cl.Ct. at 406.

welfare services. *See* 45 C.F.R. § 1357.10 (1994).

In ¶ 10 the complaint states:

As required by law, 42 U.S.C. § 622(b)(2), the State Plan provided for coordination between the services provided for children with Title IV–B money and assistance provided under Title IV–A of the Social Security Act including, specifically Emergency Assistance .... The Office of Family Assistance within the Department of Health and Human Services (HHS), which had authority over the Emergency Assistance program, had previously agreed that [Title IV–A] funds could be used to support the Title IV–B program and be included in the Title IV–B planning process.

Am. Compl. ¶ 10. This allegation also does not suggest that the government official was vested with either express or implied actual authority to bind the government in contract. Paragraph 10 alleges that the Office of Family Assistance had authority and agreed to coordinate Title IV–B money and Title IV–A assistance.

In its brief, Plaintiff does not flesh out this or any other specific element of the four that it has already admitted are required to state a contract claim under the Tucker Act. Instead, it makes several generalized arguments.

First, Plaintiff notes that the United States Court of Federal Claims in *Kentucky ex rel. Cabinet for Human Res. v. United States,* 16 Cl.Ct. 755, 1989 WL 51160 (1989) has already held that a similar state plan "creates a contractual relationship and obligates the Government to the terms agreed upon." While this is true, the decision is not helpful because the court did not discuss the elements necessary for a contract claim under the Tucker Act, but simply based its conclusion on: "HHS assistance in the preparation of the state plan, and the elaborate administrative procedures developed to determine and implement [Federal financial participation] FFP payments," probably because it was not deciding a motion to dismiss. *Commonwealth of Kentucky ex rel. Cabinet for Human Res.,* 16 Cl.Ct. at 762. Nevertheless, because this case appears to be Plaintiff's strongest case, it and the cases it relied upon bear some further discussion.

In *Kentucky ex rel.,* the court held that a contractual relationship was created under a Title IV–D grant program by the express undertaking of the government in assisting in the preparation of the state plan, in approving the plan, and in developing administrative procedures to determine and implement payments. *Id.* at 762. In that case, the government disallowed reimbursement of costs associated with payment of fees for court-appointed guardians ad litem in paternity cases involving minor putative fathers. *Id.* at 758.

To support its finding of jurisdiction under a contract theory, the court relied upon *State of Texas v. United States,* 210 Ct.Cl. 522, 537 F.2d 466 (1976), and *City of Manassas Park v. United States,* 224 Ct.Cl. 515, 633 F.2d 181 (1980), cert. denied, 449 U.S. 1035, 101 S.Ct. 611, 66 L.Ed.2d 497. But unlike *Kentucky ex rel.,* both of those cases involved statutory provisions expressly authorizing the government to enter into contractual obligations. For instance, in *State of Texas,* the court found that the defendant's execution of a Disaster Assistance Agreement was an express undertaking, and that the agreement was a contract based on the Federal Disaster Act which authorized the creation of such an enforceable obligation. *State of Texas,* 210 Ct.Cl. at 527–28, 537 F.2d 466.

In *City of Manassas Park,* the court found a jointly prepared plan made pursuant to 33 U.S.C. § 1281(g) a contractual obligation as authorized by 33 U.S.C. § 1283(a)(1). *See City of Manassas Park,* 633 F.2d at 182–84. That case involved a grant agreement to provide an advanced wastewater treatment system. *Id.* at 182. Unlike the situation in *Kentucky ex rel.,* because these cases involved a statutory provision expressly authorizing a representative to contractually bind the United States, they appear to be inconsistent with the court's conclusion reached in *Kentucky ex rel.* It is unclear from the court's discussion in *Kentucky ex. rel.* whether the government representative had actual authority to bind the government in contract.

The *Kentucky ex rel.* court also relied on *Missouri Health & Medical Org. v. United*

*States*, 226 Ct.Cl. 274, 641 F.2d 870 (1981), and *Idaho Migrant Council, Inc. v. United States*, 9 Cl.Ct. 85 (1985), aff'd. 802 F.2d 471 (Fed.Cir.1986), to support its finding of jurisdiction based upon contract.

In *Missouri Health*, plaintiff applied for and received a grant. *Missouri Health*, 226 Ct.Cl. at 276, 641 F.2d 870. When the grant was not renewed, plaintiff argued, among other things, that the Notice of Grant Award was a contract, the terms of which obligated the government to renew the grant. *Id.* at 277, 641 F.2d 870. The defendant challenged the jurisdiction of the court, arguing that a grant is not the equivalent of a contract. *Id.* at 278, 641 F.2d 870. As the jurisdiction challenge arose in the context of cross-motions for summary judgment, it is not clear from the opinion whether the challenge was based on the subject matter or on failure to state a claim, but it appears that it was the former, as the court, in denying the challenge, simply stated in general terms that "[a]n instrument, other than the traditional formal contract, can create obligations which are cognizable in this court." *Id.*

The court did not discuss whether the Notice of Grant Award contained the four elements necessary to bind the government in contract. The court relied on *State of Texas v. United States*, 210 Ct.Cl. 522, 537 F.2d 466, which, as has been noted, concerned an agreement under the Federal Disaster Act that involved a statutory provision expressly authorizing a representative to contractually bind the United States. Thus, *Missouri Health* merely stands for the proposition that notices of grant awards can be contracts binding the federal government.

In *Idaho Migrant Council*, the defendant issued a Request for Applications in order to procure business development services in Idaho to which plaintiff responded. *Idaho Migrant Council*, 9 Cl.Ct. at 86. Plaintiff submitted its application which contained a grant implementation plan that was prepared and submitted without the assistance of the defendant. *Id.* Plaintiff's application was evaluated the highest among all responses, and as a result of the evaluation, plaintiff was awarded the grant. *Id.* The court treated these express undertakings as a contract.

*Id.* at 88. As the issue of jurisdiction had not been raised by the parties, it is not surprising that without discussion of the requisite elements of a contract and relying on *City of Manassas Park*, the court concluded that obligations of the United States assumed in the programs to implement the "sovereign determination" are within Tucker Act jurisdiction. *Id.* As has been noted, *City of Manassas Park* involved a statutory provision expressly authorizing a representative to contractually bind the United States.

It is not this Court's position that grants can never be contracts within Tucker Act jurisdiction. As the Federal Circuit stated in *Trauma Service Group*:

> [A]ny agreement can be a contract within the meaning of the Tucker Act, provided that it meets the requirements for a contract with the Government, specifically: mutual intent to contract including an offer and acceptance, consideration, and a Government representative who had actual authority to bind the Government.

104 F.3d at 1326 (Fed.Cir.1997). Grant related agreements have been held to be contracts within Tucker Act jurisdiction when all the requisite elements of a contract were present, including a government representative with actual authority to bind the government in contract. *See, e.g., City of Manassas Park v. United States*, 224 Ct.Cl. 515, 633 F.2d 181 (1980) (contractual obligation authorized by 33 U.S.C. § 1283(a)(1)); *Thermalon Indus., Ltd. v. United States*, 34 Fed.Cl. 411 (1995) (contractual obligation authorized by 42 U.S.C. § 1870(c)); *Cole County Reg'l Sewer Dist. v. United States*, 22 Cl.Ct. 551 (1991) (contractual obligation authorized by 33 U.S.C. § 1283(a)(1)), aff'd. 949 F.2d 404, 1991 WL 209468 (Fed.Cir.1991); *City of Wheeling v. United States*, 20 Cl.Ct. 659 (1990) (contractual obligation authorized by 33 U.S.C. § 1283(a)(1)), aff'd. 928 F.2d 410, 1991 WL 16205 (Fed.Cir.1991).

For instance in *Thermalon*, the court held that a research grant from the National Science Foundation (NSF) was a contract within Tucker Act jurisdiction. *Thermalon Indus., Ltd.*, 34 Fed.Cl. at 414. The Court found the presence of all of the requisite elements of a contract. *Id.* The offer and acceptance were

in the solicitation. *Id.* at 415. In that case, the defendant invited small business firms to submit proposals for funding by the NSF. *Id.* Plaintiff submitted an application that was subsequently approved, and was awarded the grant. *Id.* Plaintiff commenced work under the grant. *Id.* The court found that consideration passed between the parties when plaintiff received funding for its research and the NSF in turn received from plaintiff, publication of plaintiff's research results, title to equipment purchased with grant funds, and a royalty-free license under a patent. *Id.* The mutual intent to contract, the court stated, was evidenced by "each party's dependency on the other's compliance with the terms of the grant agreement." *Id.* Moreover, the applicable statute, 42 U.S.C. § 1870(c) authorized the NSF to enter into contracts to promote scientific activities. *Id.* at 413.

The present case is distinguishable from *Thermalon.* Here, there is no statute authorizing HHS to enter into a contract. Even assuming that the other requisite elements of a contract are present, without the authority to contract, the State Plan cannot be a valid contract. Moreover, the regulations governing the Title IV–B State Plan do not support a mutual intent to contract. Pursuant to 45 C.F.R. § 205.5, "[a] State Plan ... must provide that the plan will be amended whenever necessary to reflect new or revised Federal statutes or regulations, or material change in any statutes or regulations, or material change in any phase of State law, organization, policy or State agency operation." [4] In fact, Plaintiff revised its State Plan for the 1996–1997 fiscal year removing any reference to a Title IV–A funding initiative or any measure to increase "the percentage of State and federal funding for juvenile probation services ... to 50 percent of total expenditures for juvenile probation services." *See* A123–25.

The Supreme Court reiterated in *Nat'l R.R. Passenger Corp. v. Atchison, Topeka and Santa Fe Ry.*, absent some clear indication that the legislature intends to bind itself contractually, the presumption is that "a law is not intended to create private contractual or vested rights but merely declares a policy to be pursued until the legislature shall ordain otherwise." 470 U.S. 451, 465, 105 S.Ct. 1441, 84 L.Ed.2d 432 (1985) (citing *Dodge v. Board of Education*, 302 U.S. 74, 79, 58 S.Ct. 98, 82 L.Ed. 57 (1937)). The Supreme Court explained that the primary role of a legislature is not to make contracts, but to make laws that establish policy and that "policies, unlike contracts, are inherently subject to revision and repeal, and to construe laws as contracts when the obligation is not clearly and unequivocally expressed would be to limit drastically the essential powers of a legislative body." *Nat'l R.R. Passenger Corp.*, 470 U.S. at 465, 105 S.Ct. 1441. In this case, Plaintiff has failed to cite any language in the state plan that evidences the government's intent to contract. On the contrary, the state plan appears to implement a public benefit program that has the purpose of assisting the States in providing welfare services to children. "By funding and regulating programs designed for the public good the U.S. is acting in its role as sovereign and the moneys promised are gifts or gratuities which do not establish any contractual obligation, express or implied, on the part of the United States." *Marshall N. Dana Constr., Inc. v. United States*, 229 Ct.Cl. 862 (1982).

Plaintiff's second generalized argument is that the "Government has described a similar State Plan as the 'contract between the States and the Federal Government.'" *Pl.'s Br. in Opp'n to Def.'s Mot. to Dismiss* at 9. Plaintiff does not elaborate on this argument, realizing perhaps that this statement proves nothing with regard to *this* particular set of facts.

Plaintiff's third generalized argument is that "the United States Supreme Court has described programs enacted under the Spending Clause, such as Title IV–B, as amounting 'essentially to a contract between the Government and the recipient of the funds.'" *Id.* Again, Plaintiff does not elaborate on this argument, perhaps because of the difference between "amounting essentially to a contract" and *being* a contract.

Plaintiff's final three generalized arguments are that: (1) Congressional goals

**4.** Pursuant to 45 C.F.R. § 1355.30(p)(1), § 205.5 applies to programs funded under Title IV–B.

would be thwarted unless the state plan is seen as a contract, (2) basic principles of economics support finding a contract, and (3) constitutional law requires that the state plan be a contract. *Id.* at 10–11. As the court has decided the case on the basis of the four elements of contract required for Tucker Act jurisdiction, these arguments need not be addressed.

The court's decision also renders moot the Defendant's argument that this Court lacks jurisdiction to entertain a claim where Pennsylvania is pursuing the same claim and the same relief in another court. *See Def.'s Mot. to Dismiss* at 22–24.

III. Conclusion

Because the State Plan does not possess all the requisite elements of a valid contract, the Court concludes that the Title IV–B State Plan is not a contract within this Court's jurisdiction under the Tucker Act. Specifically, Plaintiff fails to allege facts in its complaint, which, if proven, would allow the Court to find that a government representative had the actual authority to enter into contracts on behalf of the federal government. Thus, Plaintiff fails to state a claim upon which relief can be granted.

Accordingly, the Clerk of the Court is directed to enter judgment for Defendant and to dismiss the complaint and amended complaint.